[No. 8550-0-II.   Division Two.   April 27, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. MITCHALL
J. BROBAK, JR., *Appellant.*

*Geoffrey C. Cross,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Kathleen Proctor, Deputy,* for respondent.

ALEXANDER, A.C.J.—Mitchall J. Brobak, Jr., appeals his vehicular homicide conviction on grounds that the trial court erred (1) in failing to give his proposed jury instructions concerning a pedestrian's duty of care, the emergency doctrine, and the State's burden of proof; (2) in denying his motion to strike the testimony of an expert witness; (3) in commenting on the evidence; and (4) in admitting evidence of prior bad acts under ER 404(b). We affirm.

It is undisputed that a Corvette automobile driven by Brobak struck and killed Michael March on October 13, 1983. At the time of the incident, Brobak had a blood alcohol level of .18 percent. Brobak was charged with vehicular homicide under RCW 46.61.520(1), and the case proceeded to a jury trial.

There was conflicting testimony at trial about the events leading up to March's death. Jim Buchmann testified that on the day of the incident, at about 7 p.m., he and Michael March were walking alone down a roadway in Pierce County. According to Buchmann, at the time March was struck by Brobak's vehicle, it was dark and the pavement was wet. Buchmann admitted that he and March had smoked some marijuana about 1½ to 2 hours before the incident and that they were drinking vodka and orange juice as they walked. March was carrying the vodka bottle, a radio, and a notebook, and Buchmann carried an orange juice container. Buchmann said that they were walking on the narrow right hand shoulder of the road, and that March's right foot was on the fog line at the time March was struck by the Corvette. Although Buchmann said that he heard an automobile approaching, he was not alarmed by its sound. Buchmann said that March did not attempt to get out of the way of the approaching automobile. Buchmann testified that he had no idea how fast the Corvette

was traveling. After the Corvette struck March, Buchmann set the orange juice container down close to the fog line and ran toward March's body.

Brobak testified that he was driving his Corvette slowly down the road that evening. Brobak said that he perceived four boys walking down the street. According to Brobak, one of the boys was on or about the fog line, one was a slight distance from the fog line, and another was in "about the middle of his lane of traffic." Brobak said that he swerved toward the center line to avoid the collision, but he hit one boy. Brobak estimated that the person he struck was about 3 to 4 feet to the left of the right fog line when he hit him.

An expert in accident reconstruction, Washington State Patrol Detective John R. Wright testified that he had studied the scene of the impact for about 5 hours. Wright said that he considered three possible theories about how the accident occurred: (1) that March jumped out from the shoulder in front of the vehicle; (2) that there were four boys walking with their backs to the traffic and that the Corvette had hit March, who was closest to the center line; or (3) that March was walking on the fog line when the accident occurred.

After examining statements of the witnesses, the position of the deceased's body, and the debris pattern, Wright determined that the probable point of impact was close to the orange juice container near the fog line. Brobak objected to Wright's testimony, contending that the opinion was of questionable scientific or probative value. The trial court overruled Brobak's objection.

A witness called by the State, Wayne Snow, testified that he was working at a gas station near the accident scene on the night of the accident. Although Brobak had not, to that point, objected to the testimony, the trial court expressed concern that Snow's testimony would be prohibited under ER 404(b) as evidence of a prior bad act. After hearing the State's offer of proof, the trial court determined that the testimony was admissible.

Snow then testified that around 7 p.m. on the day of the accident, he saw and heard a black Corvette automobile being driven in a reckless manner. Snow related that 15 or 20 minutes later, he saw an emergency vehicle, fire truck, and police car pass near his location. When Snow got off work at about 9 or 9:30 p.m., he proceeded to the scene of the incident in question, which was about a mile or two away from his station. According to Snow, a black Corvette that he observed at the accident scene appeared to be the same one that he had seen earlier that evening.

During the trial, the court made several statements in the presence of the jury in admitting certain exhibits. Brobak made no objection to the statements. The trial judge later instructed the jury that the law did not permit him to comment on the evidence and that if it appeared that he had done so, the jury should disregard any comment entirely.

At the conclusion of the testimony, Brobak proposed several jury instructions relating to a pedestrian's duty of care, the emergency doctrine, and the State's burden of proof. The trial court refused to give the requested instructions. Brobak excepted.

The jury found Brobak guilty of vehicular homicide, and Brobak appeals.

# I
## PROPOSED JURY INSTRUCTIONS

Brobak contends that the trial court erred in failing to give his proposed jury instructions. We disagree.

## A
### Rules of the Road Instructions

Brobak proposed a series of instructions[1] on the rules of

---

[1]Brobak's proposed rules of the road instructions were as follows:
"I
"It is the duty of every person using a public street or highway, whether a pedestrian or a driver of a vehicle, to exercise ordinary care to avoid placing himself or herself or others in danger and to exercise ordinary care to avoid a collision.

the road. The State concedes that Brobak's proposed instructions concerning the pedestrian's duty of care correctly state Washington law. The State contends, however, that the trial court properly refused these instructions because they were misleading.

Instructions to a jury must:

(1) permit a party to argue his theory of the case; (2) not be misleading; and, (3) when read as a whole, properly inform the trier of fact on the law.

*State v. Gibson*, 32 Wn. App. 217, 222, 646 P.2d 786, *review denied*, 97 Wn.2d 1040 (1982). "A party is entitled to an instruction when there is sufficient evidence in the record to support it." *State v. Allery*, 101 Wn.2d 591, 598, 682 P.2d 312 (1984).

---

"II

"A statute provides:

"(1) That the driver of a vehicle shall yield the right of way, slowing down or stopping if necessary, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or approaching so closely from the opposite half of the roadway as to be in danger;

"(2) That a pedestrian crossing the roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

"This right of way, however, is not absolute but relative, and the duty to exercise ordinary care to avoid collision rests upon both parties. The primary duty, however, rests upon the party not having the right-of-way.

"III

"Every person using a public street or highway has the right to assume that other persons thereon will use ordinary care and will obey the rules of the road, and has a right to proceed on such assumption until he or she knows, or in the exercise of ordinary care should know, to the contrary.

"IV

"A statute provides:

"Where sidewalks are not provided any pedestrian walking along and upon a highway, shall, when practicable, walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction and upon meeting an oncoming vehicle shall step clear of the roadway.

"V

"A statute provides:

"A pedestrian who is under the influence of alcohol or any drug to a degree which renders himself a hazard shall not walk or be upon a highway except on a sidewalk or, where there is no sidewalk, then off the main traveled portion of the highway."

■ In a vehicular homicide case, the State must prove a causal connection between the defendant's conduct and the resulting death. *State v. Giedd,* 43 Wn. App. 787, 791–92, 719 P.2d 946 (1986). Contributory negligence of the victim is not a defense to vehicular homicide. *State v. Judge,* 100 Wn.2d 706, 718, 675 P.2d 219 (1984). Nevertheless, evidence of contributory conduct may be material on the question of whether the defendant's conduct was the proximate cause of the death. *Judge,* 100 Wn.2d at 718. In order to avoid liability in such instances, a defendant must show that the victim's contributory negligence was a supervening cause without which the accident would not have occurred. *Judge,* 100 Wn.2d at 718.

■ We agree with Brobak that the rules of the road may have a legitimate place in a vehicular homicide trial. Here, some evidence supported Brobak's theory that the victim may have violated some of the rules of the road. However, as indicated in *State v. Gibson, supra,* a trial court is not obliged to give jury instructions that are misleading. Although the proposed instructions were not misstatements of the law, they were misleading because they did not inform the jury about the legal effect of a pedestrian's violation of the rules of the road. Specifically, Brobak's proposed instructions were inadequate in that they failed to instruct the jury (1) that contributory negligence is not a defense to vehicular homicide; and (2) that in order to avoid criminal liability, a defendant must show that a victim's contributory negligence was a supervening cause, without which the accident would not have occurred. Although a proximate cause instruction was given to the jury,[2] this instruction was insufficient to explain to the jury

---

[2]The trial court's instruction 7 defined proximate cause as follows:

"To constitute vehicular homicide there must be a causal connection between the death of a human being and the criminal conduct of a defendant so that the act done was a proximate cause of the resulting death.

"The term 'proximate cause' means a cause which, in a direct sequence, unbroken by any new independent cause, produces the death and without which the death would not have happened.

the legal effect of a pedestrian's violation of the rules of the road. Accordingly, we hold that Brobak's proposed instructions were properly rejected by the trial court.

## B
### Emergency Doctrine Instruction

Brobak also contends that the trial court erred in denying his proposed instruction on the emergency doctrine.[3]

██ Brobak was charged under the vehicular homicide statute, RCW 46.61.520(1), which provides as follows:

> When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person [1] while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, or [2] by the operation of any vehicle in a reckless manner or [3] *with disregard for the safety of others,* the person so operating such vehicle is guilty of vehicular homicide.

(Italics ours.) Under this statute, negligence of the driver is not an issue. Ordinary negligence differs both from recklessness and from disregard for the safety of others. *State v. Eike,* 72 Wn.2d 760, 765, 435 P.2d 680 (1967). Because the defendant's negligence was not an issue, an instruction concerning the emergency doctrine and its application in negligence cases was irrelevant to this vehicular homicide trial. The trial court properly rejected Brobak's proposed instruction.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it

---

"There may be more than one proximate cause of the death."

[3]Brobak's proposed instruction on the emergency doctrine states:

"A person who is suddenly confronted by an emergency through no negligence of his or her own and who is compelled to decide instantly how to avoid injury and who makes such a choice as a reasonably careful person placed in such a position might make, *is not negligent* even though it is not the wisest choice." (Italics ours.)

is so ordered.

PETRICH and WORSWICK, JJ., concur.

Reconsideration denied June 12, 1987.

Review denied by Supreme Court September 1, 1987.