[No. 7828–1–III. Division Three. April 28, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL S. MACMASTER, *Appellant*.

*Harry Ries* and *Ries & Kenison,* for appellant.

*Paul A. Klasen, Prosecuting Attorney,* for respondent.

MUNSON, J.—Michael S. MacMaster was convicted by a jury of vehicular homicide, RCW 46.61.520(1). We affirm. The only precedential issue is whether a specific jury instruction requiring the State to prove a causal connection between the intoxicated driver and the resulting death need be given. We hold the instructions given were sufficient to convey this element and provide a basis for closing arguments.

Michael MacMaster, driving a Porsche, struck and killed Rhonda Raber, who was standing behind her disabled car taking things out of the trunk. The Raber car was parked on the shoulder of the road, to the right of the lane Mr. MacMaster was traveling in, and protruded over the fog line into the lane of travel about 12 inches. Mr. Raber was in front of his car working on the engine. Another vehicle, belonging to Mrs. Daggy, was parked in front of the Raber car, facing the Raber car, with headlights on pointing into the oncoming lane of traffic where Mr. MacMaster was traveling.

There was conflicting testimony on the speed Mr. Mac-Master was traveling; estimates ranged from 50 to 80 m.p.h. A blood test of Mr. MacMaster revealed a blood alcohol level of .13. The accident occurred around 8 p.m.; it was dark and just starting to rain.

Mr. MacMaster testified he thought the blinding light from the Daggy car was a car with one headlight coming toward him in his lane, attempting to pass a car in its lane, and he slowed down and pulled to the right to avoid it. He found out later the Daggy car was parked facing oncoming traffic and not moving. He testified he neither saw the Raber car nor Mrs. Raber before hitting them.

■ Several of the assignments of error made by Mr. MacMaster relate to errors in jury instructions. The test for sufficiency of jury instructions is whether the instructions, read as a whole, correctly state the applicable law, are not misleading, and allow counsel to argue their theory of the case.

The first issue is whether RCW 46.61.520 requires the State to prove a causal connection between intoxicated driving and the resulting death. We hold it does.

RCW 46.61.520 defines vehicular homicide as follows:

(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, . . .

■ Cases interpreting the negligent homicide statute, pre–1983 amendments, hold the statute requires the State to prove, as an essential element of the crime, a causal connection between the defendant's conduct (impairment of driving) and the resulting death. *State v. Engstrom,* 79 Wn.2d 469, 487 P.2d 205 (1971); *State v. Mearns,* 7 Wn. App. 818, 502 P.2d 1228 (1972), *review denied,* 81 Wn.2d 1011 (1973).[1] A causal connection between intoxication and injury was required although a literal reading of the pre–1983 statute would not have so required. *Mearns,* at 826. The 1983 amendments renamed the crime of negligent homicide in RCW 46.61.520, vehicular homicide. Laws of 1983, ch. 164, § 1, p. 719. The wording of the statute was also changed.[2]

---

[1]Cases preceding *Engstrom* and *Mearns* were inconsistent on what constitutes a proper jury instruction given the case law imposed requirement that the State prove a causal relationship between intoxication and the act producing the fatal accident. *State v. Hardwick,* 74 Wn.2d 828, 447 P.2d 80 (1968).

[2]"(1) When the death of any person ((shall)) ensues within three years as a proximate result of injury ((received)) proximately caused)) by the driving of any vehicle by any person while under the influence of ((or affected by)) intoxicating liquor or ((drugs)) any drug, as defined by RCW 46.61.502, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the

During the instruction conference here, the State objected to giving instructions 17, 18, and 19 involving rules of the road, not in issue here, on the basis they went to the issue of contributory negligence. The judge, in commenting on why he was giving these instructions, said:

> the duty and burden is on the State to prove the causation and if there's an intervening cause. The example I've used is I'll use two examples, i.e., a person driving down the road admittedly drunk and a meteor hit somebody else, hits the rider riding with him, and the meteor kills the passenger, the question of causation becomes important. Second example, which is probably more in the real world, if a person is drunk driving down the road, going through a green–lighted intersection and the opponent or to the right of him comes through and totally runs the red light and hits him, then you would have an issue of causation as to the death. *The fact that the legislature has said, in my view, that if you drive over, with a blood alcohol of over .10, there is an accident and as a result of that driving an accident the death ensues as a proximate cause thereof, then the Defendant is guilty of the crime.* That's a change in what the history of the legislature and legislation has been and a change in the interpretation of the cases. It changed at the time that we went to the rule that over .10 you're guilty of driving while under the influence. *It doesn't matter about the nature of the driving.* That's what has been taken out. We don't have the question of negligent driving or reckless driving; *it's assumed by the law, the legislature, that you are affected and contributed to the accident, I guess.*

(Italics ours.) *State v. Knowles,* 46 Wn. App. 426, 430, 730 P.2d 738 (1986) had no difficulty requiring a showing that the defendant's intoxication proximately caused the accident. The court stated:

> If the State prosecutes a case under the intoxication section of the vehicular homicide statute, it has the burden of proving that the defendant's intoxication "caused him

person so operating such vehicle ((shall be)) is guilty of ((negligent)) vehicular homicide ((by means of a motor vehicle))."

to operate his vehicle in an errant manner and that the affected driving caused the injury to the decedent." (quoting *Mearns,* at 826). The trial judge was mistaken in his examples.

The court's instruction 5, to which Mr. MacMaster objected, provided in part:

To convict the defendant of the crime of vehicular homicide, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 22nd day of April, 1985, the defendant operated a motor vehicle;

(2) That at the time, the defendant:

(a) *operated the motor vehicle and was under the influence of, or affected by intoxicating liquor, and thereby proximately caused injury to Rhonda Raber, or*

(b) operated the motor vehicle in a reckless manner and thereby proximately caused injury to Rhonda Raber, or

(c) operated the motor vehicle with disregard for the safety of others and thereby proximately caused injury to Rhonda Raber;

(3) That Rhonda Raber died as a proximate result of the injuries; and

(4) That the injury occurred in Grant County, Washington.

(Italics ours.) Mr. MacMaster also objected to court's instruction 9:

The term "proximate cause" means a cause which, in a direct sequence, unbroken by any new independent cause, produces the death, and without which, the death would not have happened.

There may be more than one proximate cause of a death.

Mr. MacMaster contends the court erred in refusing his proposed instruction as follows:

(2) That at that time the defendant

(a) was under the influence of or affected by intoxicating liquor and that condition caused the Defendant to operate his vehicle in such a manner as to proximately cause injury to another person, or

. . .

Defendant's proposed instruction K(2)(a).

A person commits the crime of negligent homicide by motor vehicle when he or she operates any motor vehicle in an errant manner while under the influence of or affected by intoxicating liquor or in a reckless manner or with disregard for the safety of others and because of the manner in which the defendant operates the vehicle proximately causes the death of any person.

Defendant's proposed instruction L.

Mr. MacMaster argues his proposed instructions, particularly instruction K(2)(a) would have made it clear that a causal connection between intoxication and injury is a required element of a vehicular homicide prosecution under the language "driving of any vehicle by any person while under the influence". Additionally, he notes the court's instruction 5 differs from the WPIC for vehicular homicide which contains specific language on the causal connection requirement.

## WPIC 90.02
### VEHICULAR HOMICIDE—ELEMENTS
### [Revised and Retitled]

To convict the defendant of the crime of vehicular homicide, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the _____ day of _____, 19__, the defendant drove or operated a vehicle;

(2) That at the time the defendant

(a) was under the influence of [intoxicating liquor] [or] [drugs] *and that condition was a proximate cause of injury to another person,* or

(b) operated the vehicle in a reckless manner and thereby proximately caused injury to another person, or

(c) operated the motor vehicle with disregard for the safety of others and thereby proximately caused injury to another person.

(3) That the injured person died [within three years] as a proximate result of the injuries.

. . .

(Italics ours.)

In oral argument before this court, defense counsel stated he was not allowed to argue the causal effect of alcohol. The record indicates he did not argue this theory; however, the record does not reflect the court denied him an opportunity to argue his causation theory. There was no attempt by defense counsel to argue causation to which an objection was made and sustained, nor is there any instruction by the court prohibiting defense counsel to so argue. That argument could properly have been made under instructions 5 and 9. In fact, the prosecuting attorney, in his first closing argument, argued the necessity for a causal connection.[3]

---

[3]The prosecutor made the following statements:

"The other element that's also involved in number 2 was that the reckless driving, the driving while under the influence or the disregard for the safety of others was the proximate cause of the injuries. . . . Why did Mrs. Raber die? Why did she receive those injuries? . . . To that the state says we have produced evidence to you beyond a reasonable doubt that Mr. MacMaster was driving under the influence, disregard for the safety of others or recklessly.

". . .

". . . Again, proximate cause, why did this accident happen?

". . .

"Now, state submits that the problem, one of the most important pieces of evidence that exists is not so far as the drunk driving, but the reckless driving, is the testimony of Mr. and Mrs. Laib and that was that they saw the light, they saw the light from at least a half a mile back. They came and they slowed down and they made the pass without any problem. Mr. Laib was of course disturbed about it, but he acted as a reasonable person. . . . He was in a hurry. But, he was not drinking, he did what I think a common person would have done and what the law expects. You come on a situation that is unanticipated, maybe cause you some problems. You just don't go ahead and drive through something you don't know what's [sic], you slow up. And when he slowed up, apprised the situation, there was no problem.

". . .

"In other words, if Mr. MacMaster's vision acuity had not been affected by his alcohol, there shouldn't have been any particular problem. . . .

". . .

". . . [I]f you were driving the legal speed limit and if you were not intoxicated or under the influence, there would still be more than adequate time to avoid taking another person's life and that's just exactly what he did.

". . .

". . . We submit that if that's the way he thought it was, he can blame it upon his drinking. The testimony is that one of the first things, one of the things your visual acuity, your perception and your response time is affected by the alcohol."

■ While we agree with the content of Mr. MacMaster's proposed instructions K and L and fail to understand why at least WPIC 90.02 was not given, the fact remains the argument could have been made based upon the instructions given. It was not. To argue here that the court misled counsel, or would not permit him to so argue without making a record of such fact during the trial, is not well received. Any error, to be considered on appeal, must be preserved.

The conviction is affirmed.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

GREEN, J., concurs.

McINTURFF, C.J. (dissenting)—I respectfully dissent. The judge's comments, made in the instruction conference,[4] persuade me that the judge misconstrued RCW 46.61.520.

---

Likewise, while Mr. MacMaster did not mention proximate cause, he did make the following statements:

". . . [B]ut the truth, Ladies and Gentlemen, is that the Laibs didn't see it and there's absolutely no reason whatsoever why Mr. MacMaster should have seen it. You couldn't see it. All you saw was a big light in your lane of travel.

"The prosecution wants to convict Mr. MacMaster because he was driving a Porsche. . . .

"Let us be more sensitive than that. Let us apply the law. Let us protect this man's rights. Let us not make him criminally responsible for this unfortunate set of circumstances. We talk about accidents. Could there be such a thing as an accident? Of course there can. An accident doesn't mean that it's Jim's fault or Jerry's fault or Kathy's fault or Charlie's fault. It's an accident, an unfortunate accident. Don't let us convict Mr. MacMaster for that accident. . . .

". . . I'm not going to go over the instructions with you because I know that you'll read them, talk about them. I ask you, Ladies and Gentlemen, to recall the evidence and I ask you to remember the one very very important thing and that is that Michael MacMaster is innocent. The only reason that would change is if they prove to you beyond a reasonable doubt that he's otherwise. I thank you for your attention."

[4]See majority, at 234, where the judge's comments upon the State's objection to instructions 17, 18, and 19 are set out. These comments precede Mr. MacMaster's objections to the court's instructions 5 and 9.

Particularly, the court did not believe the State was required to prove an essential element of the crime, *i.e.*, a causal connection between the intoxication and the resultant death. The majority and I agree that such a causal connection must be shown. The judge's misunderstanding was conveyed to counsel and influenced the jury instructions given. Although the majority and I agree the instructions proposed by Mr. MacMaster on the causal connection, particularly K(2)(a), are succinct and we agree the court's instruction 5 departs from even WPIC 90.02, we disagree on whether instruction 5 was adequate to allow Mr. MacMaster to argue his theory of the case. This is particularly so where the causal connection was in issue and the judge found that causal connection element to be unnecessary and conveyed that interpretation to counsel, thus misleading counsel.

The court's instruction 5, as set out by the majority, is ambiguous because it could be read to find Mr. MacMaster guilty if it is proven he drove while intoxicated and a fatal injury resulted from an accident, without proof of the causal connection discussed above. The court's instruction 5 leaves out critical language found in WPIC 90.02(2): "That at the time the defendant (a) was under the influence of [intoxicating liquor] [or] [drugs] *and that condition* was a proximate cause of injury to another person, . . ." (Italics mine.) The court's instruction 5 requires only a showing that Mr. MacMaster "operated the motor vehicle and was under the influence of, or affected by intoxicating liquor, and thereby proximately caused injury . . ." In other words, the jury could decide proof that Mr. MacMaster operated a motor vehicle and was under the influence was sufficient to find him guilty if driving the vehicle was a proximate cause of Mrs. Raber's death. Because it is not clear whether the phrase "and thereby proximately caused" refers to only the operation of the motor vehicle, the danger is that the instruction would be interpreted not to require proof that Mr. MacMaster's operation of the vehicle was affected by the intoxication. Certainly Mr. MacMaster's

driving of the vehicle was a proximate cause of Mrs. Raber's death, but it also must be shown that the condition of intoxication caused Mr. MacMaster's driving to be impaired. Given the above analysis and the judge's erroneous interpretation of RCW 46.61.520, I find the instruction given was ambiguous.

Having found instruction 5 was ambiguous because it did not clearly state the essential causation element between the impaired driving and the accident, the next question is whether the error was harmless. The right to closing argument is axiomatic in our system of justice. This right is the last opportunity to persuade the jury there may be reasonable doubt of the defendant's guilt. *State v. Fateley,* 18 Wn. App. 99, 108, 566 P.2d 959 (1977). The constitutional right to be represented by counsel includes the right of counsel to argue the case to the jury. *Seattle v. Erickson,* 55 Wash. 675, 677, 104 P. 1128 (1909); Annot., *Prejudicial Effect of Trial Court's Denial, or Equivalent, of Counsel's Right To Argue Case,* 38 A.L.R.2d 1396 (1954).

> To appear and defend in person and by counsel is a right guaranteed to one accused of crime by the constitution of this state, as well as by the Federal constitution, and it is not to be denied that a part of that right is the right to address the jury on the questions of fact the issues present for determination. This right, too, has always been regarded as one of the greatest value, not only to the accused, but to the due administration of justice, and any limitation of it which has seemed to deprive the accused of a full and fair hearing has generally been held error entitling the defendant to a new trial.

*State v. Mayo,* 42 Wash. 540, 548–49, 85 P. 251 (1906).

Effective denial of the right to argue to the jury may occur where the trial court's action so emasculates counsel's argument as to be tantamount to denial of that argument. *Foster v. State,* 102 Tex. Crim. 602, 279 S.W. 270 (1926) (trial court erroneously excluded argument on element of gross negligence required to convict defendant of assault with an automobile). Civil cases have also recognized the value of closing argument. *Heard, Leverette & Adams, P.C.*

*v. Stone,* 167 Ga. App. 113, 306 S.E.2d 72 (1983) (denial of the right to have more experienced counsel present closing arguments was not harmless error where evidence would have supported a verdict for either party).[5]

Here, because the trial judge mistakenly interpreted the mandatory elements of the crime of vehicular homicide and clearly made his interpretation of the statute known to counsel, the effect was to mislead counsel and deprive Mr. MacMaster of the opportunity to argue his causal connection theory to the jury. In the face of the trial judge's stated opinion (in essence that it makes no difference whether Mr. MacMaster's intoxication caused erratic driving which caused the death of Mrs. Raber) it is understandable that Mr. MacMaster's counsel did not proceed with that portion of closing arguments which would have focused on the absence of the State's proof of the causation element. Mr. MacMaster's objection to the court's failure to instruct on this element adequately preserved the error for review on appeal; under these facts it was unnecessary to specifically object to the restriction concerning the scope of closing argument. Preclusion of argument on an element of a crime, in this instance the element of causation, was not harmless error. I cannot say that the evidence, not tainted by the error, is by itself so overwhelming that it necessarily leads to a finding of guilt. *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986).[6]

---

[5]Some courts have held denying an accused the right to argue to the jury was reversible error without citing a specific constitutional violation, apparently deeming such denial so prejudicial as to deprive the accused of a fair trial. Annot., *Prejudicial Effect of Trial Court's Denial, or Equivalent, of Counsel's Right To Argue Case,* 38 A.L.R.2d 1396, 1403 (1954).

[6]Since it is impossible to determine from the verdict form under which prong of RCW 46.61.520(1) the jury found Mr. MacMaster guilty, it was not harmless error. The jury verdict form A simply stated: "We, the jury, find the defendant, Michael MacMaster Guilty of the crime of vehicular homicide, RCW 46.61.520(1), as charged." RCW 46.61.520(1) provides three alternate means to commit vehicular homicide. Unanimous agreement on the particular alternate means was not

242

Accordingly, I would reverse Mr. MacMaster's conviction and remand for a new trial with proper instructions.

Review granted by Supreme Court September 1, 1988.

required to convict Mr. MacMaster. *State v. Rangitsch,* 40 Wn. App. 771, 777, 700 P.2d 382 (1985).