[No. 55195-2. En Banc. September 14, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL S. MACMASTER, *Petitioner*.

*Ries & Kenison,* by *Harry E. Ries,* for petitioner.

*Paul Klasen, Prosecuting Attorney,* for respondent.

PEARSON, J.—Defendant seeks reversal of the Court of Appeals decision affirming his conviction for vehicular homicide, contending the jury instruction failed to require a causal connection between his drinking and the fatal accident. In order to support a conviction under the vehicular homicide statute, we are asked whether there must be a causal link between a defendant's drinking and a victim's death and, if so, whether the jury instruction in this case was sufficient to support the defendant's conviction. We adhere to our consistent application of the rule that a causal connection is required and, accordingly, reverse the Court of Appeals.

It is undisputed that on April 22, 1985, at approximately 7:50 in the evening, while traveling eastbound on State Route (SR) 170, defendant's vehicle struck and killed Rhonda Raber. Immediately prior to the accident, Eli Raber's 1974 Datsun sat disabled and parked on the eastbound side of SR 170, facing east. Rhonda Raber, his wife, was standing at the left rear corner of the Datsun retrieving articles from the rear of the vehicle. Also parked on the eastbound shoulder was a 1979 Oldsmobile driven by Irene Daggy. She, however, had parked 17 feet east of the Raber vehicle facing west, with her headlights illuminating the Raber vehicle and facing oncoming traffic.

Disputed in this case is (1) the speed of defendant's automobile at the time of the accident; (2) the extent to which, if at all, the parked vehicles protruded into the lane of travel; (3) the angle at which the Oldsmobile's headlights confronted oncoming traffic; (4) whether the Raber vehicle was displaying any lights while it sat disabled; (5) the amount of alcoholic beverages consumed by the defendant; and (6) the accuracy of the gas chromatography reading of defendant's blood alcohol level. In essence, the factual dispute is: what was the proximate cause of the accident that resulted in Mrs. Raber's death?

State evidence placed defendant's blood alcohol level at .13. Expert testimony, based upon the extent of damage to the vehicles, placed defendant's speed immediately prior to the accident at anywhere from 65 to 80 m.p.h. in a maximum 55 m.p.h. zone. The State also contended there was no evidence supporting a conclusion that the parked vehicles protruded over the fog line.

Expert evidence offered by the defendant, based upon mathematical computation, placed his vehicle's speed at a maximum of 56.7 m.p.h. and a minimum speed of 40 m.p.h. immediately preceding the accident. In addition, numerous witnesses established that between 4 p.m. and 7:30 p.m. on that day, defendant had consumed one can of low alcohol beer, a burrito, 2⅓ 10–ounce glasses of beer and two tuna

fish sandwiches, and that immediately preceding the accident he exhibited no indication of being affected by alcohol. Both expert and eyewitness evidence offered by defendant placed the Raber and Daggy vehicles over the fog line and parked in the lane of oncoming traffic by as much as 1 foot.

Defendant testified that as he traveled east along SR 170 that evening, it was dark and had just started to rain. He saw what was actually the front right headlight of the Daggy vehicle appear in his lane of travel, and he assumed that the vehicle was a "one–eyed bandit" displaying only its front left headlight while passing another automobile. Defendant testified that he down–shifted and pulled onto the righthand shoulder so as to allow the passing vehicle more room to pass. He next remembers waking in the hospital the following morning. Defendant contends that as a result of the blinding effect of the Daggy headlight, and the lack of light on the Rabers' Datsun, he never saw Rhonda Raber nor the Raber vehicle.

Defendant was convicted of vehicular homicide by a jury that was instructed as follows:

> To convict the defendant of the crime of vehicular homicide, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 22nd day of April, 1985, the defendant operated a motor vehicle;
> (2) That at the time, the defendant:
> (a) operated the motor vehicle and was under the influence of, or affected by intoxicating liquor, and thereby proximately caused injury to Rhonda Raber, or
> (b) operated the motor vehicle in a reckless manner and thereby proximately caused injury to Rhonda Raber, or
> (c) operated the motor vehicle with disregard for the safety of others and thereby proximately caused injury to Rhonda Raber;
> (3) That Rhonda Raber died as a proximate result of the injuries; and
> (4) That the injury occurred in Grant County, Washington.

Instruction 5. Defendant took timely exception to this instruction. In its place, defendant proposed an instruction which stated in part:

(2) That at that time the defendant
(a) was under the influence of or affected by intoxicating liquor *and that condition caused* the Defendant to operate his vehicle in such a manner as to proximately cause injury to another person . . .

(Italics ours.) In denying the giving of this instruction, the trial court stated:

> The fact that the legislature has said, in my view, that if you drive over, with a blood alcohol of over .10, there is an accident and as a result of that driving an accident the death ensues as a proximate cause thereof, then the Defendant is guilty of the crime. That's a change in what the history of the legislature and legislation has been and a change in the interpretation of the cases. It changed at the time that we went to the rule that over .10 you're guilty of driving while under the influence. It doesn't matter about the nature of the driving. That's what has been taken out. We don't have the question of negligent driving or reckless driving; *it's assumed by the law, the legislature, that you are affected and contributed to the accident,* I guess. I don't like this law, by the way, but I think it is the law.

(Italics ours.) Following this improper ruling, defendant took timely exception to the court's failure to give his proposed instruction regarding causation. Nevertheless, as defense counsel stated at oral argument, he knew exactly where the trial court stood following this ruling.

The vehicular homicide statute, standing alone, understandably creates confusion:

> (1) When the death of any person ensues within three years as a proximate result of injury *proximately caused by the driving* of any vehicle by any person *while under the influence* of intoxicating liquor or any drug, as defined by RCW 46.61-.502, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle is guilty of vehicular homicide.

(Italics ours.) RCW 46.61.520. The statute was in this form at the time of the accident, having been last amended in 1983.[1]

---

[1]Prior to the 1983 amendment, the statute read as follows:

"When the death of any person shall ensue within three years as a proximate result of injury received by the driving of any vehicle by any person while under the influence of or affected by intoxicating liquor or drugs, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the

■ A literal reading of the statute would not require that the influence of intoxicating liquor on the defendant be a proximate cause of the ensuing death. Nevertheless, to avoid a "strict liability" result, this court and the Court of Appeals have engrafted on the statute, and have consistently held, that impairment due to alcohol must be a proximate cause of the fatal accident. *State v. Engstrom,* 79 Wn.2d 469, 475, 487 P.2d 205 (1971); *State v. Giedd,* 43 Wn. App. 787, 719 P.2d 946 (1986); *State v. Gantt,* 38 Wn. App. 357, 684 P.2d 1385 (1984); *State v. Orsborn,* 28 Wn. App. 111, 626 P.2d 980 (1980), *review denied,* 97 Wn.2d 1012 (1982); *State v. Fateley,* 18 Wn. App. 99, 566 P.2d 959 (1977); *State v. Mearns,* 7 Wn. App. 818, 502 P.2d 1228 (1972), *review denied,* 81 Wn.2d 1011 (1973).

In *Mearns,* the court reversed the conviction based on the following jury instruction that required no causal connection between impairment due to alcohol and the fatal accident:

> To convict the defendant of the crime of negligent homicide . . . the state must prove beyond a reasonable doubt:
>
> . . . .
>
> (2) That the defendant then operated this motor vehicle while under the influence of, or affected by intoxicating liquor; and
> (3) That the operation of the motor vehicle by defendant was the proximate cause of the injury . . .

*Mearns,* 7 Wn. App. at 819. In contrast, an instruction in *Orsborn* stating, "at that time, the defendant (a) was under the influence of or affected by intoxicating liquor and that condition was a proximate cause of injury to another person" was upheld as properly stating the law. *Orsborn,* 28 Wn. App. at 115 n.2. Unfortunately, the jury instruction in this case ambiguously defines the offense and falls somewhere in between these two examples, because it does not specifically require a causal connection between the defendant's alcohol consumption and the victim's death.

---

person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle." *See* Laws of 1975, 1st Ex. Sess., ch. 287, § 3.

The ambiguity in this instruction was made crystal clear, at least to counsel, when the trial court erroneously ruled that the Legislature intended to abolish the judicially engrafted causation requirement when it enacted the 1983 amendments to the vehicular homicide statute. Absolutely nothing in the amendment supports such a conclusion, however. A comparison of the pre–1983 and post–1983 statutes evinces no intention on the Legislature's part to alter the causation requirement. In fact, cases after the 1983 amendment have continued to require such a causal connection. *See State v. Brobak,* 47 Wn. App. 488, 736 P.2d 288, *review denied,* 108 Wn.2d 1034 (1987); *State v. Knowles,* 46 Wn. App. 426, 730 P.2d 738 (1986). In the case at hand, the Court of Appeals recognized the trial court error and held that such a causal requirement still exists under the amended version of the statute. *State v. Mac-Master,* 51 Wn. App. 231, 233–36, 752 P.2d 954 (1988). We now affirm the Court of Appeals on this issue and reaffirm our consistent adherence to the rule requiring a causal connection.

Despite the trial court error, the Court of Appeals nevertheless affirmed defendant's conviction and held the defendant failed to preserve the error for appeal. The Court of Appeals implicitly held the defendant should have argued his legal theory to the jury, in spite of the trial court's ruling. *MacMaster,* 51 Wn. App. at 237–38. The court reasoned that the instruction as worded did not specifically prohibit defense counsel's argument that causation is a required element. In fact, the opinion stressed that in its closing argument the *prosecution* had discussed proximate cause and the evidence pertaining to defendant's consumption of alcohol. *MacMaster,* 51 Wn. App. at 237 n.3. Were we to affirm the Court of Appeals, not only would a new duty be imposed upon criminal defense counsel, but counsel would be placed in both the precarious and ethically questionable position of arguing to the jury in flagrant disobedience of the trial court's ruling. Such is not the law.

■ The usual test for the sufficiency of jury instructions is "whether the instructions, read as a whole, correctly state the applicable law, are not misleading, and allow counsel to argue their theory of the case." *MacMaster,* 51 Wn. App. at 233. *Accord, State v. Mark,* 94 Wn.2d 520, 526, 618 P.2d 73 (1980). In the case at hand, the jury instruction did not properly state the law of causation with respect to vehicular homicide. As we held in *State v. Wanrow,* 88 Wn.2d 221, 236, 559 P.2d 548 (1977), "[t]he test of 'sufficiency' is just that, and is not a rule to be applied where the instruction is an *erroneous* statement of the law." In *Wanrow,* the defendant was convicted of second degree murder and first degree assault. In holding that the jury instruction with respect to self–defense improperly stated the law, this court traced the history of the rule pertaining to the sufficiency of jury instructions and concluded:

> Thus, the test of an instruction's sufficiency is an additional safeguard to be applied only where the instruction given is first found to be an accurate statement of the law. Furthermore, it would be illogical to apply such a test to erroneous instructions—of what significance is it that counsel may or may not be able to argue his theory to the jury when the jury has been misinformed about the law to be applied?

*Wanrow,* 88 Wn.2d at 237.

More recently in *State v. Acosta,* 101 Wn.2d 612, 683 P.2d 1069 (1984), the jury instructions failed to inform the jury which party had the burden of proving the element of self–defense. Parallel to the situation here, the contention was made in *Acosta* that the instructions as given did not preclude argument from defense counsel regarding the defendant's theory of the case. There, we rejected such reasoning:

> The jury should be informed in some unambiguous way that the State must prove absence of self–defense beyond a reasonable doubt. The defendant is entitled to a correct statement of the law, and should not be forced "*to argue* to the jury that the State [bears] the burden of proving absence of self–defense."

*Acosta,* 101 Wn.2d at 621–22 (quoting *State v. Savage,* 94 Wn.2d 569, 582, 618 P.2d 82 (1980)). We went on to hold, "the defense attorney is only required to argue to the jury

that the facts fit the law; the attorney should not have to convince the jury what the law is." *Acosta,* 101 Wn.2d at 622. Again, were we to affirm the Court of Appeals, defense counsel in this case would have been required to persuade the jury that the ambiguous subsection of the court's instruction required two proximate causal connections. Requiring such an argument, following a clear ruling by the court to the contrary, simply is not proper.

■ When an instruction contains an erroneous statement of the law, we have consistently applied the following test to determine whether the error constitutes reversible error:

> When the record discloses *an error in an instruction* given on behalf of the party in whose favor the verdict was returned, the error is *presumed to have been prejudicial,* and to furnish ground for reversal, unless it affirmatively appears that it was harmless. . . .
>
> A harmless error is an error which is *trivial,* or *formal,* or *merely academic,* and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.*

*State v. Wanrow,* 88 Wn.2d at 237 (quoting *State v. Golladay,* 78 Wn.2d 121, 139, 470 P.2d 191 (1970)); *accord, State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983); *State v. Savage, supra.*

As a result, there is a presumption that the error of law was prejudicial to the defendant. Only if it can be said that the error "in no way affected the final outcome of the case" may this court affirm defendant's conviction.

In this case, as seen in instruction 5, one of three alternative means would have supported a conviction of vehicular homicide. Unfortunately, there is no way to discover whether the jury relied upon the intoxication prong of the instruction to reach its verdict.

■ One argument would be that if a verdict is supportable under the two prongs that did not improperly state the law, then the error did not affect the outcome. Such reasoning, however, requires substitution of this court's judgment for that of the jury's. We do not know whether this

particular jury would have convicted the defendant without the intoxication prong. Furthermore, we do not know whether the jury would have found that defendant's alcohol consumption was, beyond a reasonable doubt, a proximate cause of the fatal accident.

Directly on point is our decision in *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). In that case, the defendant was convicted of aggravated murder. The jury was not required to disclose whether it was the rape or kidnapping allegation that had supported its finding of the aggravation element. When this court determined there was not sufficient evidence to support the kidnapping charge, it was then unclear whether the aggravation element was still supported. Consequently, a remand was required. The result in *Green* is compelling in the case at hand.

The trial court's instruction 5 in this case only required the defendant's driving to have been the cause of the accident. In order to convict, the jury merely had to find that, coincidentally, defendant was also under the influence. This is not a proper statement of the law. For defendant to be guilty of vehicular homicide, the condition of impairment due to alcohol must have been a proximate cause of the fatal accident. It cannot be said that this error "in no way affected the outcome of the case." As a result, the Court of Appeals decision is reversed, and the case is remanded for a new trial consistent with this opinion.

UTTER, DOLLIVER, and SMITH, JJ., concur.

DURHAM, J. (concurring)—In the view of the majority, the crime of vehicular homicide is defined such that "impairment due to alcohol must be a proximate cause of the fatal accident." Majority, at 231. This may be a correct interpretation of the crime described by RCW 46.61.520 *prior* to its amendment in 1983. *State v. Engstrom,* 79 Wn.2d 469, 475, 487 P.2d 205 (1971). In my view, however, it is not a correct construction of the current statutory provision.

The effects of the 1983 amendments on RCW 46.61.520 were as follows (underlining represents new language):

(1) When the death of any person ((shall)) ensues within three years as a proximate result of injury ((received)) proximately caused)) by the driving of any vehicle by any person while under the influence of ((or affected by)) intoxicating liquor or ((drugs)) any drug, as defined by RCW 46.61.502 . . . the person so operating such vehicle ((shall be)) is guilty of ((negligent)) vehicular homicide ((by means of a motor vehicle)).

Laws of 1983, ch. 164, § 1, p. 719. As can be seen, under the pre–1983 statutory language, the crime of "negligent homicide by means of a motor vehicle" described the act of causing mortal injury by driving "while *under the influence of or affected by intoxicating liquor . . .*" (Italics mine.) As a result of the 1983 amendments, however, the crime is renamed "vehicular homicide", and describes the act of causing mortal injury by driving "while under the influence of intoxicating liquor . . . *as defined by RCW 46.61.502 . . .*" (Italics mine.)

RCW 46.61.502, to which the 1983 amendments newly refer, provides four alternative definitions of driving "while under the influence of intoxicating liquor", thus establishing the crime commonly known as "DWI". Under RCW 46.61.502(1) and (2), a driver is driving while under the influence if his breath or blood alcohol content exceeds stated minima. DWI also obtains when the driver is "under the influence of or affected by" liquor or drugs or both. RCW 46.61.502(3) and (4). None of these definitions requires proof that the driver's drinking has impaired his ability to drive. *See Bellevue v. Redlack*, 40 Wn. App. 689, 693–95, 700 P.2d 363, *review denied*, 104 Wn.2d 1013 (1985). The crime of DWI consists merely of driving while "legally intoxicated"—*i.e.*, with a certain level of intoxicant in the system, or while affected by an intoxicant.

Because it incorporates the DWI definitions, the crime of vehicular homicide similarly cannot require proof that driving ability actually is impaired. And since impairment

need not be proven, how can it be that a causal relationship between impairment and injury must be shown? Such a construction ignores the incorporation of the DWI definitions, and leaves the crime unchanged from its pre–1983 amendment. The only textually honest interpretation of the statute is that it does not require proof of impairment–injury causation.[2]

The majority requires a causal relationship between impairment and injury in order "to avoid a 'strict liability' result . . ." Majority, at 231. This approach is exactly contrary to stated legislative intent. DWI is designedly an "illegal per se" offense. *See State v. Brayman,* 110 Wn.2d 183, 186, 751 P.2d 294 (1988) (discussing RCW 46.61-.502(1)); *State v. Franco,* 96 Wn.2d 816, 819–20, 639 P.2d 1320 (1982) (discussing precursor to what is now RCW 46.61.502(2)). The per se approach recognizes dangerous drunk driving as a problem of a severity that only clear–cut preventatives, overbroad though they may be,[3] are capable of addressing. The DWI laws are not only deterrents, however. The legislative scheme reflects also a judgment that the drinking driver is culpable for willfully creating the risk that he might cause serious harm to others. *Cf.* Presidential Comm'n on Drunk Driving, *Final Report* 3 (November 1983) (drunk driving is "socially unacceptable" and "will not be tolerated"); *State v. Caibaiosai,* 122 Wis. 2d 587, 593, 363 N.W.2d 574 (1985) ("combining the operation of a

---

[2]In addition to the reference to RCW 46.61.502, textual evidence supportive of this construction can be found in the 1983 Legislature's decision to rename the crime RCW 46.61.520 defines. Formerly, the crime was called "negligent homicide by means of a motor vehicle". Now, it is simply "vehicular homicide". The deletion of the element of fault is consistent with the adoption of the DWI approach. *See* Final Legislative Bill Report, SB 3106, at 1 (1983) ("the term 'vehicular homicide' is more descriptive of the crime than 'negligent homicide'.").

[3]A common criticism of the per se definitions is that they fail to recognize that some individuals may be able to drive well even while their system alcohol content exceeds the legal limits. This criticism has already been answered. *See State v. Brayman,* 110 Wn.2d 183, 751 P.2d 294 (1988); *State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982).

motor vehicle with being in an intoxicated state is conduct which is *malum prohibitum* and is pervasively antisocial").

In 1983, the Legislature took this disapproval of drunk driving to its logical next steps. If drinking drivers generally are culpable, the Legislature reasoned, drinking drivers who injure or kill are more culpable. *See* Final Legislative Bill Report, SB 3106, at 1 (1983) ("greater penalties should be imposed on a DWI defendant when his actions have caused another person serious bodily injuries."). The statutory expression of this reasoning is the incorporation of the per se DWI definitions into the renamed crime of vehicular homicide and the creation of a new crime, also described in terms of the DWI definitions, of vehicular assault. RCW 46.61.522.

To my mind, the scheme of the three DWI statutes is clear and logical: building on the basic DWI offense, the Legislature has imposed higher penalties depending on the consequences of the illegal conduct. None of the crimes requires proof of actual impairment. And, thus, none should be held to require proof of a causal relationship between impairment and injury. *Cf. Micinski v. State,* 487 N.E.2d 150, 153–54 (Ind. 1986). I think the legislated scheme is well described by the following passage from a decision of the Wisconsin Supreme Court, interpreting that state's vehicular homicide statute:

> Under this statute there is an inherently dangerous activity in which it is reasonably foreseeable that driving while intoxicated may result in the death of an individual. The legislature has determined this activity so inherently dangerous that proof of it need not require causal connection between the defendant's intoxication and the death.

*Caibaiosai,* at 594; *see also Micinski,* at 154.

Unfortunately, a majority of this court is not convinced by my arguments, but subscribes to Justice Pearson's view that vehicular homicide occurs only when a proximate causal relationship is demonstrated between a defendant's impairment from alcohol and a fatal automobile accident. Thus, that is the law applicable to this case, and to the cases of future defendants. Considering then the adequacy

of the jury instructions under that law, I concur in Justice Pearson's judgment reversing MacMaster's conviction. This action does not signal abandonment of my intellectual reservations to the court's holding. Rather, it recognizes that ultimate resolution of the causation issue may have to await legislative clarification.

CALLOW, C.J., and BRACHTENBACH and ANDERSEN, JJ., concur with DURHAM, J.

DORE, J. (dissenting)—The majority holds that the trial court's instruction on the elements of vehicular homicide is a misstatement of the law and that this constitutes reversible error. I disagree. The instruction, since it reflects the language of the vehicular homicide statute and implies a causal connection between defendant's drinking and the injury, is not a misstatement of the law. Even if the instruction interpreting the elements of vehicular homicide was erroneous, the error is harmless. Therefore, I would uphold the jury's conviction of Mr. MacMaster for vehicular homicide.

RCW 46.61.520(1) provides:

> When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle is guilty of vehicular homicide.

The trial court issued instruction 5 which in pertinent part provides:

> To convict the defendant of the crime of vehicular homicide, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 22nd day of April, 1985, the defendant operated a motor vehicle;
> (2) That at the time, the defendant:
> (a) operated the motor vehicle and was under the influence of, or affected by intoxicating liquor, and *thereby proximately caused injury to Rhonda Raber*, or

(Italics mine.) Clerk's Papers, at 61. This instruction mirrors the vehicular homicide statute. Furthermore, the instruction's language, "and thereby proximately caused injury to", expresses a causal connection between the defendant's drinking and the resulting injury. *Webster's Third New International Dictionary* (1968) defines "thereby" as "in consequence of that . . ."

Furthermore, instruction 9 defines the term "proximate cause" to mean that cause "which, in a direct sequence, unbroken by any new independent cause, produces the death," and further instructs the jury of the necessity of a causal connection between the act and the death of the person involved. Instructions 5 and 9 make it implicit that the operation of the vehicle in an intoxicated condition must be the proximate cause of the death. I find that the instructions contained a proper statement of the law.

Jury instructions are considered sufficient when they contain a proper statement of the law and the instructions read as a whole allow counsel to argue their theory of their case. *Smith v. McDaniel,* 53 Wn.2d 604, 610, 335 P.2d 582 (1959); *State v. Wanrow,* 88 Wn.2d 221, 236, 559 P.2d 548 (1977).

The majority suggests that the trial court's oral ruling on the causation element precluded defendant from arguing his theory of the case. However the prosecutor did not feel so constrained and argued the causal requirement was required in order to convict defendant of vehicular homicide in his closing argument. His argument, then, notwithstanding the trial court's ruling, opened the door for the defendant to argue that the facts in this case did not establish causation. Furthermore, the instructions combined with the prosecutor's closing argument, which preceded defendant's closing argument, did not put defendant in the improper position of trying to convince the jury on what the law was, as the majority claims.

In light of the instructions' language and the prosecutor's closing argument, the defendant was not limited in arguing any causation theory he wanted to make. Further, the

record does not show that the court denied defendant an opportunity to argue his causation theory. As the Court of Appeals noted, defense counsel did not attempt to argue causation to which an objection was made, nor is there any instruction by the court prohibiting defense counsel to so argue. Defense counsel could have argued the causal effect of alcohol under instructions 5 and 9.

In sum, the instructions adequately advised the jury of the rule of law applicable to the issue of the case and allowed defense counsel to argue his theory of the case. Consequently, the trial court did not err when it gave instructions 5 and 9.

In any event, any alleged error from the instructions that the majority finds to exist is not prejudicial. In order for error to be prejudicial it must affect the outcome of the trial. *Brown v. Spokane Cy. Fire Protec. Dist. 1,* 100 Wn.2d 188, 196, 668 P.2d 571 (1983); *Wanrow,* 88 Wn.2d at 237. Here, the prosecutor argued the necessity for a causal connection between the victim's death and the defendant's drinking by stating in pertinent part:

> The other element that's also involved in number 2 was that the reckless driving, the driving while under the influence or the disregard for the safety of others *was the proximate cause of the injuries.* And the state would answer that question for you by asking another question. Why did Mrs. Raber die? Why did she receive those injuries? . . . To that the state says we have produced evidence to you beyond a reasonable doubt that Mr. MacMaster was driving under the influence, disregard for the safety of others or recklessly.
>
> . . . .
> . . . while [MacMaster] was . . . at [the tavern]—we know that Marian Pittser was in the lounge and was engaged in a conversation with him and we think that this conversation is an indication of affecting either his driving or intoxication . . .
> . . . So we know Mr. MacMaster, according to Mr. Garza, is going 80 miles an hour. That's just 2 miles before the turn around, the cut–off.
>
> . . . .
> . . . one of the most important pieces of evidence that exists is . . . the testimony of Mr. and Mrs. Laib and that was that they saw the light, they saw the light from at least a half a mile back. They came and they slowed down and they made the pass without any problem. Mr. Laib was of course disturbed

about it, but he acted as a reasonable person. He said he was in a hurry to get home to watch a T.V. program. He was in a hurry. But, he was not drinking, he did what I think a common person would have done and what the law expects. You come on a situation that is unanticipated, maybe cause you some problems. You just don't go ahead and drive through something you don't know what's about, you slow up. And when he slowed up, apprised the situation, there was no problem.

. . . .

. . . We would concede in many cases at night, if you're driving, you have a moving light it can cause some problems. I mean there's no argument about that. But, the Oldsmobile was not moving. It sat there. It was not in any way deceiving anybody.

In other words, if Mr. MacMaster's vision acuity had not been affected by his alcohol, there shouldn't have been any particular problem.

. . . .

. . . if you were driving the legal speed limit and if you were not intoxicated or under the influence, there would still be more than adequate time to avoid taking another person's life and that's just exactly what he did.

. . . .

Now, [MacMaster] says that he thought the Oldsmobile was an one–eyed bandit making a pass and so he headed for the ditch. Members of the jury, how can that be when we know that the Oldsmobile was not moving? The one–eyed bandit. We submit that if that's the way he thought it was, he can blame it upon his drinking. *The testimony is that one of the first things, one of the things your visual acuity, your perception and your response time is affected by the alcohol.*

Closing Arguments of Counsel, at 6–20. Thus, the "causal connection" element was argued to the jury. Therefore, this error, if any, in the instruction could not have affected the outcome of the trial since the prosecutor persuasively argued the causal connection element.

Finally, there is sufficient evidence that the jury could find that the defendant operated his vehicle in an intoxicated condition which was the proximate cause of the fatal accident. The evidence demonstrates that Mr. MacMaster had several beers before the accident. Subsequent to the accident he was belligerent and using profane language on the people helping him. Further, the one person who was charged with his care for the first hour after the accident

testified that MacMaster was drunk, not simply that he had been drinking. Not only was the defendant affected by his drinking, he was legally intoxicated. The defendant's blood alcohol registered .13 percent. Finally, the prosecutor argued to the jury that defendant's visual acuity, perception and response time was affected by the alcohol, proximately causing the accident beyond a reasonable doubt.

## CONCLUSION

The jury received adequate instructions informing them of the crime of vehicular homicide. These *instructions* reflected the language of RCW 46.61.520(1) and implied the requirement of a causal connection between defendant's intoxication and the resulting accident. Even if the instructions were erroneous, the defendant was not prejudiced. The prosecutor argued proximate cause in his closing argument and the defendant could have similarly argued.

I would affirm defendant's conviction.