[No. 17080–5–I.  Division One.  December 31, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. RONALD D.
KNOWLES, *Appellant.*

*Anne E. Roberts* of *Washington Appellate Defender Association*, for appellant.

*Seth R. Dawson, Prosecuting Attorney*, and *Alfred P. Gehri, Deputy*, for respondent.

WEBSTER, J.—Ronald D. Knowles appeals from the judgment and sentence entered upon his bench trial conviction of vehicular homicide. Specifically, he contends that there was insufficient evidence that his intoxication proximately caused the decedent's death. The State cross–appeals from the sentence entered. It argues that, under the sentencing guidelines of the Sentencing Reform Act of 1981 (RCW 9.94A), Knowles' conviction at age 17 of driving while intoxicated should have been computed in his offender score as an adult conviction, rather than as a juvenile conviction. We find that the evidence supports the finding of the requisite causation and that the trial court correctly computed Knowles' offender score. Consequently, both the judgment and sentence are affirmed.

## FACTS

On July 8, 1984, Ronald Knowles met with friends for a picnic. At the picnic, Knowles both smoked marijuana and drank beer. Members of the group, including Knowles, performed certain crude sobriety tests before leaving the picnic area. The trial court found the fact that Knowles undertook the tests to be indicative of group members' concerns for his ability to drive.

Knowles nonetheless drove himself and five passengers home from the picnic. In order to pass the vehicle in front of him, he drove his car across a double yellow line into a lane of oncoming traffic. At the time, he was approaching a "blind curve" with a posted cautionary speed of 35 miles per hour. His speed at that point was at least 57 miles per hour. While in the lane of oncoming traffic, Knowles' vehicle struck a vehicle coming from the opposite direction. One

of the latter vehicle's two occupants died at the scene of the accident.

Knowles claimed that the actions of the driver of the car he passed prevented him from returning to the proper lane of travel prior to the collision. Witnesses at the scene, however, stated that the accident would not have occurred had Knowles not been drinking and driving so fast. The occupants of the passed car testified that Knowles' car was being driven erratically and out of control. The trial judge consequently concluded that Knowles' return to the proper lane was not impeded, and that Knowles simply did not take evasive action prior to the collision.

Blood tests revealed that Knowles had a blood alcohol level of at least .07 percent at the time of the accident.[1] A toxicologist testified that degradation of ability to drive begins at .05 percent.[2] The trial court found that Knowles' consumption of alcohol and marijuana substantially and appreciably affected his ability to drive at the date and time in question.

The trial court made the following finding with respect to causation:

> As a proximate result of the defendant's operation of said motor vehicle while under the influence of or affected by intoxicants and marijuana, and with disregard for safety of others, [the decedent] died . . .

Knowles was ultimately found guilty as charged. This, however, was not his first serious traffic conviction. At age 17 he was convicted in district court of driving while intoxicated (DWI). At sentencing on the present charges, the

---

[1]The evidence below indicated that the standard range of alcohol "burn–off" is from .01 to .02 percent per hour, with an average of .015 percent per hour. The court, in its findings, erroneously sets forth the standard burn–off range as "from .11 to .20." Knowles' blood alcohol level was .05 percent 2 hours after the accident. Thus, taking into account burn–off, and utilizing the lower figure of the burn–off range, Knowles' blood alcohol level was at least .07 percent when the accident occurred.

[2]A person is guilty of driving while under the influence if he drives while he has a .10 percent blood alcohol level. RCW 46.61.502.

State asked the court to count the prior conviction as an adult serious traffic conviction. This would have given Knowles an offender score of 1 and a sentencing range of 21 to 27 months. The court rejected the request and counted the conviction as a juvenile conviction. Knowles therefore had a sentencing range of 15 to 20 months; he received the maximum—20 months' confinement.

### SUFFICIENCY OF EVIDENCE

Knowles challenges the sufficiency of the evidence and findings supporting the requisite element of proximate causation between his intoxication and the decedent's death.

In a criminal case, the test for determining the sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). "'Any challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *State v. Fisher*, 40 Wn. App. 888, 891–92, 700 P.2d 1173 (1985) (quoting *State v. Gear*, 30 Wn. App. 307, 310, 633 P.2d 930 (1981)).

Vehicular homicide is statutorily defined as follows:

> When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug . . . or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle is guilty of vehicular homicide.

RCW 46.61.520(1). Thus, there are three distinct ways of committing the offense: (1) by driving while under the influence of or affected by liquor or drugs; (2) by driving in a reckless manner; or (3) by driving with disregard for the safety of others. *State v. Escobar*, 30 Wn. App. 131, 633 P.2d 100 (1981).

Proof of a proximate causal link between the defendant's

misconduct and the fatal accident is an essential element of the crime of vehicular homicide. *State v. Gantt,* 38 Wn. App. 357, 359, 684 P.2d 1385 (1984). If the State prosecutes a case under the intoxication section of the vehicular homicide statute, it has the burden of proving that the defendant's intoxication "caused him to operate his vehicle in an errant manner and that the affected driving caused the injury to the decedent." *State v. Mearns,* 7 Wn. App. 818, 826, 502 P.2d 1228 (1972).

■ Knowles' arguments focus on whether the trial court made insufficient findings on the causal link between his consumption of alcohol and marijuana and the decedent's death. However, the trial court found Knowles guilty under *both* the "intoxication" and "disregard for the safety of others" subsections of the vehicular homicide statute. The phrase "disregard for the safety of others" implies "an aggravated kind of negligence or carelessness, falling short of recklessness but constituting a more serious dereliction than the hundreds of minor oversights and inadvertences encompassed within the term 'negligence.'" *State v. Eike,* 72 Wn.2d 760, 765–66, 435 P.2d 680 (1967).

■ The court's finding with regard to proximate cause precisely tracks the causation requirements of the statute. Any ambiguity in the finding may be clarified with resort to the trial court's oral opinion. *State v. White,* 31 Wn. App. 655, 658, 644 P.2d 693 (1982). In his oral opinion, the trial judge noted that "the abilities of judgment and reaction begin to depreciate at .05" percent blood alcohol level. In conclusion, he summarized the causes of the accident:

> His [Knowles'] actions were not of instant reaction. He knew this road, he knew that the advisory signs obviously by implication were thirty–five miles an hour. His driving was heedless, in total disregard of the safety of his own passengers who the Court finds urged him to slow down and that he was driving too fast. His actions or reactions demonstrate *to this court a substantial* effect by the consumption of intoxicants and drug smoking. The only thing he did was put on brakes and went dead ahead causing the death of a young woman.

Clearly, the court found the requisite proximate causation. Viewed in a light favorable to the State, the evidence and inferences therefrom support the trial court's findings. Knowles admitted smoking marijuana and drinking beer prior to the accident. According to the toxicologist, the driving of a person with a blood alcohol content similar to that of Knowles at the time of the accident would be impaired. Finally, Knowles drove into a blind curve, in the wrong lane, at a speed of at least 22 miles per hour over the posted cautionary speed. These factors lead to the conclusion that the effect of alcohol and drugs on Knowles' driving ability, together with his disregard for others' safety, set in motion a chain of events, unbroken by any intervening superseding event, which caused the decedent's death. *See State v. Gantt, supra* at 360.

### SENTENCING REFORM ACT OFFENDER SCORE

The State contends Knowles' DWI conviction in district court at age 17 should be counted as an adult, rather than juvenile, serious traffic conviction for purposes of calculating his "offender score" under the sentencing reform act (the SRA). Treating the conviction as an adult conviction would increase the sentencing range for the present conviction from 15 to 20 months to 21 to 27 months.

The applicable scoring rules are set forth in former RCW 9.94A.360(4):[3]

> If the present conviction is for Vehicular Homicide, . . . [c]ount . . . one point for each . . . adult . . . serious traffic conviction, and ½ point for each . . . juvenile . . . serious traffic conviction.

Because Knowles' prior conviction was counted as a juvenile conviction, and no other prior convictions were considered in calculating his offender score, he had a score of ½. The score was rounded down to zero. *See* former RCW

---

[3]In 1986, the Legislature amended RCW 9.94A.360. The pertinent subsection now reads: "(11) If the present conviction is for a felony traffic offense count . . . one point for each adult, and ½ point for each juvenile, prior conviction for each other . . . serious traffic offense." Laws of 1986, ch. 257, § 25.

9.94A.360(10). In effect, he was treated as if he had no prior convictions.

The SRA does not explicitly define either "adult conviction" or "juvenile conviction." "Conviction" is defined as an adjudication of guilt pursuant to RCW Titles 10 (Criminal Procedure) or 13 (Juvenile Courts and Juvenile Offenders). RCW 9.94A.030(6). The statute, therefore, could imply that a conviction pursuant to Title 13 is a "juvenile" conviction. Under RCW 13.04.030(5)(c), juvenile courts do not have original jurisdiction to hear proceedings relating to traffic offenses committed by juveniles 16 years of age and older. A case involving DWI (RCW 46.61.502) charges against a 17–year–old would consequently be tried under the district court procedures set forth in RCW 10.04. Because the case is tried in an adult court, it could be considered an "adult", as opposed to a "juvenile", conviction.

On the other hand, the "juvenile conviction" could refer only to the offender's age at the time of conviction. Thus, one commentator has said that, for purposes of offender scoring, "[c]onvictions of . . . Driving While Intoxicated . . . are assigned a weight of one point if they occurred as an adult and one–half point if they occurred as a juvenile." D. Boerner, *Sentencing in Washington* § 5.14, at 5–25 (1985). The SRA itself provides no guidance on this issue; hence, statutory construction rules come into play.

■■■ Rules of statutory construction favor defining "juvenile conviction" in terms of the age of the offender at the time of his conviction. Penal statutes should be reasonably construed in favor of defendants. *State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821, *review denied,* 104 Wn.2d 1028 (1985). The purpose behind the more lenient interpretation is to place the burden squarely on the Legislature to clearly and unequivocally warn people as to what actions would expose one to liability for penalties and what the penalties would be. 3 C. Sands, *Statutory Construction* § 59.03 (4th ed. 1974). Because the Legislature failed to explicitly define "juvenile conviction", we must favor that interpretation which most favors defendants. Defining con-

victions by the offender's age at the time of conviction is most favorable to a juvenile convicted in an adult court. Thus, the trial court properly scored Knowles' DWI conviction.

Affirm.

SCHOLFIELD, C.J., and GROSSE, J., concur.

Reconsideration denied April 2, 1987.