[No. 25761-7-I. Division One. May 3, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL
HENRY LARKIN, *Appellant.*

350

*Eric Broman* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

GROSSE, J. — Michael H. Larkin appeals his convictions on two counts of first degree robbery. Larkin claims his convictions violate the double jeopardy clause of the United States and Washington State Constitutions. Larkin contends the two counts must merge for purposes of sentencing. In addition, Larkin challenges the validity of the information charging him with the robbery. The State cross-appeals, claiming that the trial court erroneously calculated the offender score

for sentencing by not including Larkin's prior rape conviction. We affirm the conviction and remand for resentencing.

On September 25, 1989, the appellant, Michael H. Larkin, and an accomplice robbed Kermit and Eleanor Abelson in their residence. Larkin and his accomplice roused the Abelsons by pounding on their front door and gained entry to the Abelson residence by stating they had something for the Abelsons' son, Bruce. Mr. Abelson opened the door and the two intruders pushed their way inside, knocking Mr. Abelson down. Larkin was carrying a sawed-off .12-gauge shotgun; his accomplice was disguised with a nylon stocking over his face. Larkin pointed the gun at the Abelsons and ordered the couple to lie on the floor. Mr. Abelson remained on the floor near the door; Mrs. Abelson was on the floor near the kitchen. As Larkin kept the gun trained on the Abelsons, the accomplice demanded the couple's money and guns. The accomplice took cash from Mr. Abelson's wallet in the bedroom and a watch of Mrs. Abelson's that had been given to her by Mr. Abelson. The accomplice also took a small gun collection of Mr. Abelson's. The two men then left the Abelson residence, taking the handset cords from the telephones with them.

Larkin was arrested 3 days later for suspicion of first degree robbery and, after receiving *Miranda* warnings, Larkin confessed to his participation in the crime. Larkin was charged with two counts of first degree robbery.[1] Larkin was tried by jury and found guilty of two counts of first degree

---

[1]The information accused Larkin and his accomplice of two counts of first degree robbery. Specifically count 1 stated that each defendant

did unlawfully take personal property, to-wit: a gun, jewelry, watch, decanter and other personal property from the person and in the presence of Kermit Abelson, against his will, by the use or threatened use of immediate force, violence and fear of injury to such person or his property and to the person or property of another and in the commission of and in immediate flight therefrom the defendants were armed with and displayed what appeared to be a firearm and deadly weapon, to-wit: a shotgun . . ..

Count 2 was substantially identical except that it contained the name of Mrs. Abelson.

robbery. By special verdict, the jury found Larkin was armed with a deadly weapon.

At the sentencing hearing, the court reviewed Larkin's criminal history, which included a previous conviction for second degree rape. Although Larkin was 17 when charged with that conviction, the juvenile court declined jurisdiction, and Larkin was tried as an adult. Larkin was convicted of second degree rape, a class B felony, at age 17. The trial court did not factor this previous conviction into Larkin's offender score because the Sentencing Reform Act of 1981 (SRA) discounts juvenile class B or C felonies if the defendant is over 23 at the commission of the current offense. Former RCW 9.94A.360(4).[2] The trial court considered the rape conviction as a juvenile offense, and accordingly did not include it in Larkin's criminal history because Larkin was over 23 years of age when the robberies were committed.

In addition, the trial court included both convictions of first degree robbery in computing the offender score. Because first degree robbery is a violent felony, Larkin's offender score increased to 2 for each conviction of robbery. The standard range sentence for first degree robbery with a deadly weapon is 65 to 78 months, based upon an offender score of 2.[3] The trial court sentenced Larkin to 75 months for each count of robbery, to be served concurrently.

█ Larkin claims his conviction for both counts of robbery violates the double jeopardy clause embodied in the fifth amendment to the United States Constitution and article 1, section 9 of the Washington Constitution. The double jeopardy clause of the Fifth Amendment guarantees that no individual shall be "subject for the same offense to be twice put in jeopardy of life or limb". U.S. Const. amend. 5. Similarly, the Washington Constitution provides: "No person shall be compelled in any criminal case to give evidence

---

[2]Laws of 1989, ch. 271, § 103, amended by Laws of 1990, ch. 3, § 706.

[3]Former RCW 9.94A.310, enacted by Laws of 1989, ch. 271, § 101, amended by: Laws of 1990, ch. 3, § 701; Laws of 1991, ch. 32, § 2; Laws of 1992, ch. 145, § 9.

against himself, or be twice put in jeopardy for the same offense." Const. art. 1, § 9. The article 1, section 9 double jeopardy provision has been construed to provide protection identical to that provided under the federal constitution. *State v. Schoel*, 54 Wn.2d 388, 391, 341 P.2d 481 (1959).

 The double jeopardy clause provides threefold protection against: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). The Supreme Court indicated in *Albernaz v. United States*, 450 U.S. 333, 344, 67 L. Ed. 2d 275, 101 S. Ct. 1137 (1981) that the Legislature has the authority to determine punishment, and accordingly may permit multiple punishments: "[T]he question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Albernaz*, 450 U.S. at 344. The Court again emphasized the importance of legislative intent in *Missouri v. Hunter*, 459 U.S. 359, 74 L. Ed. 2d 535, 103 S. Ct. 673 (1983): "[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the Legislature intended." *Hunter*, 459 U.S. at 366. Absent specific expression of legislative intent, in order to determine whether the legislature intended to allow multiple convictions and punishments for a course of conduct, the Supreme Court has set forth a rule of statutory construction. This "same evidence" test examines "whether 'each provision requires proof of a fact [that] the other does not.' " *Albernaz v. United States*, 450 U.S. at 339 (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 52 S. Ct. 180 (1932)). Similarly, the Washington Supreme Court has stated that two offenses are the "same offense" under the double jeopardy clause if the offenses are

the same in law and in fact. If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses

are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.

*In re Fletcher*, 113 Wn.2d 42, 47, 776 P.2d 114 (1989) (quoting *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)).

■ As an initial matter, this court must determine if Larkin was indeed subjected to multiple punishments. If the sentences for multiple convictions run concurrently and do not exceed the maximum penalty for the most serious crime, no violation of double jeopardy exists. *State v. Johnson*, 96 Wn.2d 926, 932, 639 P.2d 1332 (1982); *In re Sauve*, 103 Wn.2d 322, 330, 692 P.2d 818 (1985). In the case at hand, the sentences are concurrent; however, the second conviction is factored into the offender score underlying each robbery sentence. Consequently, the 75-month sentence exceeds the maximum penalty for one robbery conviction based upon an offender score of 0, which would have been 65 months.[4] Therefore, if both robbery convictions are based upon the same offense, Larkin is being subjected to multiple punishments for the same offense in violation of the prohibition against double jeopardy.

■ The question of whether the double jeopardy clause prohibits the conviction of multiple counts of robbery based upon the number of victims is addressed in *State v. Rupe*, 101 Wn.2d 664, 683 P.2d 571 (1984). The *Rupe* court found that the elements of robbery[5] included (1) the taking of property, and (2) the use or threat of force on the victim. *Rupe*, 101 Wn.2d at 693. In that case, the defendant had taken money from two different bank tellers during the course of a single bank robbery. The defendant charged that because the bank owned the property, only one robbery had taken place. The court disagreed, reasoning it was not necessary for the victim to own the property taken; possession or custody was

---

[4]Former RCW 9.94A.310.

[5]RCW 9A.56.190 provides:

"A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone."

sufficient to satisfy the robbery statute. Therefore, because each teller had separate control and possession of the money, which was taken by force, the defendant's conviction on two counts of robbery did not place him in double jeopardy.[6]

Larkin argues *Rupe* is inapposite, contending that this case is controlled by *State v. Johnson*, 48 Wn. App. 531, 740 P.2d 337, *review denied*, 109 Wn.2d 1011 (1987). In *Johnson* this court held that a video store robber could not be convicted of two counts of robbery without violating the prohibition against double jeopardy. In that case, the robber had not taken any money directly from the two store clerks, but took only items the clerks had joint responsibility for. Because the same evidence was used to prove each conviction, the court reasoned that only one robbery had occurred. *Johnson*, 48 Wn. App. at 535.[7]

*Johnson* is distinguishable, however. *Johnson* addresses the robbery of a commercial establishment in which no per-

---

[6]*See also State v. Bresolin*, 13 Wn. App. 386, 534 P.2d 1394 (1975) (finding two counts of robbery did not violate prohibition against double jeopardy when father and son were robbed in their residence; guns and a wallet were stolen), *review denied*, 86 Wn.2d 1011 (1976); *State v. Penn*, 32 Wn. App. 911, 650 P.2d 1111 (upholding multiple counts of robbery against defendant who robbed three persons at gunpoint in grocery store), *review denied*, 98 Wn.2d 1012 (1982).

[7]The State urges this court to depart from *Johnson*, alleging that it is unsoundly decided. A split of authority exists on the issue of whether multiple counts of robbery may be sustained during one taking of property. Some jurisdictions allow multiple counts if multiple victims are threatened, despite the fact that the money is taken from a common safe or cash register. *See Commonwealth v. Rozplochi*, 385 Pa. Super. 357, 561 A.2d 25 (1989); *Commonwealth v. Dooley*, 332 Pa. Super. 227, 481 A.2d 336 (1984). Other jurisdictions focus on the fact that robbery is based upon theft or larceny, and therefore only one robbery conviction is appropriate when there has been one theft from a common owner, even if multiple victims are threatened and business property is taken directly from the control of multiple victims. *See, e.g., State v. Collins*, 174 W. Va. 767, 329 S.E.2d 839 (1984); *State v. Faatea*, 65 Hawaii 156, 648 P.2d 197 (1982); *State v. Potter*, 285 N.C. 238, 204 S.E.2d 649 (1974). *See also* Annot., *Single or Separate Larceny Predicated Upon Stealing Property From Different Owners at the Same Time*, 37 A.L.R.3d 1407 (1971).

*Johnson*'s rationale harmonizes these two approaches, analyzing robbery not only as an offense against an individual but also as an offense against property. This analysis is consistent with the elements of robbery as defined by Washington law. Accordingly, we leave it undisturbed.

sonal property was taken and no business property was taken directly from either clerk. In a case factually similar to the present case, *State v. Turner*, 31 Wn. App. 843, 644 P.2d 1224, *review denied*, 97 Wn.2d 1029 (1982), the court found no double jeopardy when a defendant was convicted on two counts of robbery after robbing Mr. and Mrs. Sackman in their home. The defendant took cash from Mr. Sackman's wallet, which was in another room, Mrs. Sackman's purse, jewelry from Mrs. Sackman's hand, ammunition, and a coin collection. The court found the circumstances of the robbery supported two independent convictions of robbery: Mr. Sackman had turned over his wallet, and Mrs. Sackman had given her rings. Therefore, the offenses were not identical in fact. *Turner*, 31 Wn. App. at 847.

The above cases focus on both ownership and possession or control of stolen items as a basis on which to support multiple convictions of robbery. This court held in *State v. Latham*, 35 Wn. App. 862, 865, 670 P.2d 689 (1983) (quoting 67 Am. Jur. 2d *Robbery* § 14, at 38-39 (1973)), *review denied*, 100 Wn.2d 1035, 102 Wn.2d 1018 (1984):

> The deprivation of any ownership interest, including an undivided share, in the property taken, will support a robbery conviction. Also,
> [a] taking from one having the care, custody, control, management, or possession of the property is sufficient.

(Citations omitted.) *See also State v. Blewitt*, 37 Wn. App. 397, 680 P.2d 457 (1984) (robbery occurs when person has constructive possession of property), *review denied*, 103 Wn.2d 1017 (1985).[8]

---

[8]This line of reasoning has likewise been followed in other jurisdictions. *See People v. Wakeford*, 418 Mich. 95, 341 N.W.2d 68 (1983) (defendant taking money from two cashiers in a grocery store robbery was appropriately convicted on both counts of robbery); *Commonwealth v. Levia*, 385 Mass. 345, 431 N.E.2d 928 (1982) (defendant taking cash register money from one employee and cash from pocket of another committed two robberies; offense is against person robbed and not entity owning the property); *Jordan v. Commonwealth*, 2 Va. App. 590, 347 S.E.2d 152 (1986) (defendant taking cash register money from one employee and business cash from person of another employee was properly convicted on two counts of robbery; focus of robbery statute is on violence to person robbed and not ownership of property). Larkin attempts to distinguish *Wakeford* and *Levia* on the basis that

Applying that focus to the instant case, personal effects were stolen from both Abelsons. Cash was stolen from Mr. Abelson's wallet and jewelry was stolen from Mrs. Abelson. Larkin argues the items were not removed from the persons of the Abelsons, therefore no separate and independent facts justify two counts of robbery. Larkin's argument, however, invites a hairsplitting distinction between possession and control of personal property, a distinction not recognized by the *Turner* court, which found the taking of cash from a wallet in a separate room sufficient to support a separate charge of robbery.

Larkin further argues that under community property principles, *Johnson* controls because both victims had equal responsibility and control over the property taken. This argument focuses exclusively on ownership status, attempting to distinguish community property from separate property. Such an analysis invites inconsistent results. Moreover, this court's decision in *State v. Latham, supra*, suggests that community ownership will support multiple counts of robbery. In that case, two defendants stole a car in the presence of the owner and a passenger. The State charged each defendant with two counts of robbery, one against the owner and one against the passenger. The court reversed the convictions against the passenger on the basis that the passenger had no ownership interest or dominion over the car when it was stolen. Implicit in the court's reasoning is the assumption that two counts of robbery may have been upheld if the driver and passenger both had an ownership interest in the car.

In sum, the trial court's sentencing of Larkin based upon two counts of robbery does not subject Larkin to double jeopardy because the two offenses were not identical in fact. Larkin threatened both Abelsons and deprived each of an ownership interest in property taken in their presence.

■ Larkin also contends the trial court erred by not merging the two counts of robbery. Merger is a doctrine of statutory

---

the robbery statutes in those cases use the term "assault". However, these courts approach robbery as an offense which is not merely a taking of property, but also an offense against an individual. This reasoning is consistent with Washington's approach in *Rupe*.

construction and applies only when the Legislature requires as proof for a particular degree of crime the commission of an act defined elsewhere in the criminal code as a separate crime. *In re Fletcher*, 113 Wn.2d at 51 (citing *State v. Vladovic*, 99 Wn.2d at 420-21). A merger analysis seeks to determine whether one crime merges into another, essentially as a lesser included offense.[9] The case at hand does not present the issue of a merger of a lesser included offense into another crime; the multiple charges are identical charges based upon multiple victims. Crimes against multiple victims are not merely incidental to each other, but have "independent purpose or effect" and are not subject to the doctrine of merger. *State v. Hudlow*, 36 Wn. App. 630, 633, 676 P.2d 553 (1984); *State v. Clapp*, 67 Wn. App. 263, 275, 834 P.2d 1101 (1992). Because the two robbery convictions are supported independently by evidence satisfying the elements of robbery, the doctrine of merger is not applicable. Therefore, the trial court did not err by sentencing Larkin based upon two convictions of first degree robbery. Larkin also alleges that the information charging him with first degree robbery was defective because it did not specifically allege intent, an essential common law element of the crime of robbery. Resolution of this issue is controlled by *State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991). The case is directly in point and adverse to Larkin. There was no reversible error.

■ Lastly, the State cross-appeals, contending the trial court erred by categorizing Larkin's previous rape conviction as a juvenile conviction. We agree. Larkin was tried as an adult on this conviction and thus it was an adult conviction. On declination the juvenile court lost jurisdiction over Larkin. *State v. Sharon*, 100 Wn.2d 230, 668 P.2d 584 (1983).

---

[9]*See State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979), *cert. dismissed*, 446 U.S. 948 (1980): "[W]hen the conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense, but may not be convicted of more than one offense if one offense is included in the other. An included offense is defined as one which is established by proof of the same or less than all of the facts required to establish the commission of the offense charged." *Johnson*, at 677 n.4 (citing Model Penal Code § 1.07 (1985)).

The SRA in effect at the time Larkin committed the 1989 robberies provided nothing to the contrary. Former RCW 9.94A.360(4)[10] states:

> The offender score is the sum of points accrued under this section rounded down to the nearest whole number.
>
> . . . .
>
> (4) Include class A juvenile felonies only if the offender was 15 or older at the time the juvenile offense was committed. Include class B and C juvenile felony convictions only if the offender was 15 or older at the time the juvenile offense was committed and the offender was less than 23 at the time the offense for which he or she is being sentenced was committed.

The definition section of the SRA provides that a defendant's criminal history includes

> a defendant's prior convictions *in juvenile court* if: (i) The conviction was for an offense which is a felony or a serious traffic offense and is criminal history *as defined in RCW 13.40.020-(6)(a)*; (ii) the defendant was fifteen years of age or older at the time the offense was committed; and (iii) with respect to prior juvenile class B and C felonies or serious traffic offenses, the defendant was less than twenty-three years of age at the time the offense for which he or she is being sentenced was committed.

(Italics ours.) Former RCW 9.94A.030(10)(b).[11]

The Washington Supreme Court has specifically addressed the effect of an order of declination upon a juvenile who is subsequently tried in adult court.[12] In *State v. Sharon*, 100 Wn.2d 230, 668 P.2d 584 (1983) the Supreme Court affirmed this court's holding that once a juvenile has been transferred

---

[10]Laws of 1989, ch. 271, § 103, amended by Laws of 1990, ch. 3, § 706.

[11]Laws of 1989, ch. 394, § 1, amended by Laws of 1989, ch. 252, § 2. As noted by the State, the Legislature later amended this definition and the offender score provision set forth in RCW 9.94A.360 to include all sexual offense convictions:

" 'Criminal history' shall always include juvenile convictions for sex offenses . . . ." Laws of 1990, ch. 3, § 602(12)(b).

[12]RCW 13.40.020(16) defines "respondent" as a "juvenile", which is further explained by RCW 13.40.020(10) as "any individual who is under the chronological age of eighteen years and *who has not been previously transferred to adult court*". (Italics ours.)

360

to adult court pursuant to an order of declination, the individual no longer meets the definition of "juvenile" and is no longer under the jurisdiction of the juvenile court system. This court noted "[w]hen a juvenile court waives jurisdiction, the youth comes under the permanent jurisdiction of the adult criminal system." *State v. Sharon*, 33 Wn. App. 491, 494, 655 P.2d 1193 (1982) (quoting *State v. Mitchell*, 32 Wn. App. 499, 500, 648 P.2d 456 (1982)), *aff'd*, 100 Wn.2d 230, 668 P.2d 584 (1983).[13]

Larkin's conviction for two counts of robbery is affirmed. Because the trial court erroneously failed to include Larkin's second degree rape conviction in his offender score calculation, we remand for resentencing.

KENNEDY and AGID, JJ., concur.

---

[13]While we believe that this court's decision in *State v. Knowles*, 46 Wn. App. 426, 730 P.2d 738 (1986) is factually distinguishable, to the extent that it is not, we decline to follow it. Larkin correctly notes that the Legislature has not acted to change the SRA and define "juvenile conviction" after the *Knowles* decision. Such inaction on the part of the Legislature after a court interpretation indicates the Legislature's acquiescence in the court's decision. *State v. Coe*, 109 Wn.2d 832, 750 P.2d 208 (1988). However, such legislative inaction does not indicate the Legislature has also acquiesced to the extension of *Knowles* beyond its specific facts.