# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35412-1-III |
| | ) | |
| Respondent, | ) | ORDER GRANTING |
| | ) | MOTION FOR |
| v. | ) | RECONSIDERATION, |
| | ) | WITHDRAWING |
| DALLIN D. FORT, | ) | OPINION FILED |
| | ) | FEBRUARY 26, 2019, |
| Appellant. | ) | AND REMANDING FOR |
| | ) | NEW RAP 9.10 HEARING |

Whereas, on October 29, 2018, we remanded this direct appeal to the trial court for it to conduct a hearing and answer three questions that would assist in completing the trial record. These questions are set forth in the attached previous order.

Whereas, on November 8, 2018, the trial court conducted the requested hearing. At the hearing, Dallin Fort was not represented by counsel, and he remarked as much. The trial court permitted the hearing to proceed forward. It thereafter entered written findings of fact responsive to this court's questions. Mr. Fort later argued to this court he was denied his constitutional right to counsel at the November 8, 2018 hearing.

Whereas, on February 26, 2019, this court issued its unpublished opinion in this matter. Mr. Fort moved for reconsideration and again argued he was denied his constitutional right to counsel at the November 8, 2018 hearing. At our request, the

State responded to Mr. Fort's motion.

Whereas, we determine that the November 8, 2018 hearing was not ministerial, but instead was a critical stage of the proceedings, in that the written findings from the hearing would resolve a factual issue determinative of this direct appeal. Mr. Fort therefore had a constitutional right to have counsel present at the hearing. The absence of counsel constitutes structural error, and such error is not subject to harmless error analysis.

IT IS THEREFORE ORDERED

(1) Mr. Fort's motion for reconsideration is granted;

(2) This court's February 26, 2019 unpublished opinion is withdrawn;

(3) The trial court must conduct a new hearing to clarify/supplement the record in accordance with RAP 9.10, and enter written findings as requested in the attached prior order;

(4) Prior to the hearing, the trial court shall appoint counsel for Mr. Fort so he is represented at the hearing;

(5) Mr. Fort and both trial counsel shall appear at the hearing; and

(6) The procedures set forth in the attached prior order shall be followed.

PANEL:      Judges Lawrence-Berrey, Fearing and Pennell

FOR THE COURT:

Lawrence-Berry, C.J.

ROBERT LAWRENCE-BERREY
CHIEF JUDGE

2

COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35412-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | ORDER TRANSFERRING |
| v. | ) | APPEAL TO SUPERIOR |
| | ) | COURT FOR REFERENCE |
| DALLIN D. FORT, | ) | HEARING |
| | ) | |
| Appellant. | ) | |

Dalin Fort has appealed his convictions for two counts of rape of a child in the first degree. He argues the constitutional prohibition of double jeopardy barred the trial that led to his conviction. Specifically, he argues that in a previous trial, the court declared a mistrial for "good cause" rather than "extraordinary and striking circumstances."

The State responds that Mr. Fort has waived his challenge to the basis for this court's declaration of a mistrial. Specifically, the State argues that Mr. Fort moved for mistrial. In support of its argument, the State cites the October 7, 2017 order declaring mistrial. In that order, defense counsel approved language stating that "the parties moved the court for an order of mistrial."

The transcribed record, however, is silent in this regard. The transcribed record only shows:

The jury asked the court what it should do if it could not reach a unanimous verdict. In response, the court brought the jury into the courtroom and asked the foreperson, if given more time, whether there was a reasonable probability the jury could reach a unanimous verdict. The foreperson responded in the negative. The court then asked counsel if either had questions. Neither did. The court instructed the jury to return to the jury room where it would receive instructions. The court then went into recess.

The court then reconvened, and immediately began discussing with the attorneys possible trial dates. At some point, the order mentioned above was handed to the court and the court signed it.

There is no record of when the court discharged the jury. There is no record of any discussion about declaring a mistrial, or requesting input from the parties. There is no record of anyone actually moving for a mistrial. Because of this lack of a record, we might reasonably infer that the jury was discharged during the court's recess and there were no discussions between the court and counsel about declaring a mistrial. We would rather not infer from a lack of record.

Accordingly, IT IS ORDERED that this appeal is transferred to the Spokane County Superior Court for a reference hearing to be conducted within the purview of RAP 16.12, and the court shall enter written findings of fact as to the following questions:

1.      Precisely how and at what point was the jury discharged;

2.      Were there discussions between the court and counsel concerning declaring a mistrial that are not reflected in the transcribed record and, if so, what does each party contend was said, and what does the court find was said;

3.      If there were discussions off the record, who was present, and where did those discussions occur.

2

In addition to answering these three questions, the trial court may make such additional findings that are reasonably necessary to provide context concerning how the declaration of mistrial was entered, so as to avoid the necessity of an additional reference hearing. If the findings involve off-the-record discussions, the court should set forth what each party contends was said, and the trial court's findings as to what was said.

IT IS FURTHER ORDERED that the trial court shall file within 90-days of the date of this order, its written findings of fact on the questions set forth and on any other pertinent factual matters address by the parties. The appellant is thereafter directed to file a supplemental designation of clerk's papers to transmit said findings to the appellate court and a statement of arrangements for the preparation of a verbatim report of proceedings for the reference hearing held. Said record shall be provided to this court at public expense. Thereafter, this court will determine further disposition of Mr. Fort's Appeal.

Lawrence-Berrey, C.J.

ROBERT LAWRENCE-BERREY
CHIEF JUDGE

3

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35412-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DALLIN D. FORT, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Dallin Fort appeals his conviction for two counts of

first degree rape of a child. He argues the trial court violated the constitutional

prohibition on double jeopardy when it ordered a mistrial based only on "good cause"

when the Washington Constitution permits retrial only in cases of "extraordinary and

striking circumstances." The State responds that Mr. Fort waived this argument by jointly

moving for a mistrial. The record was unclear in this respect, so we remanded the matter

to the trial court for supplementation of the record.

The facts found by the remand judge support our determination that Mr. Fort, at a

minimum, authorized his attorney to jointly move for a mistrial. We generally affirm, but

remand for the trial court to strike various community custody conditions and to strike the

DNA[1] collection fee and the criminal filing fee.

FACTS

Mr. Fort's first trial in 2006 resulted in his conviction on two counts of first degree rape of a child. *State v. Fort*, 190 Wn. App. 202, 213, 360 P.3d 820 (2015). Some time later, Mr. Fort filed a personal restraint petition, and this court ordered a new trial based on a public trial rights violation. *Id.* at 219.

Mr. Fort was retried in October 2016, but the jury could not reach a unanimous verdict. The judge asked the presiding juror if, given more time, was there a reasonable probability of reaching a verdict. The juror responded, "No." Report of Proceedings (RP) at 240. The judge asked the court reporter to take the jury to the jury room. The report of proceedings reflects the court then rescheduled the matter for a new trial.

A written order entered contemporaneously states, "The Parties moved the court for: an order declaring a mistrial . . . the court finds that: good cause exists. Trial was had in the matter and the jury was unable to reach a verdict. . . . IT IS ORDERED that: a mistrial is declared." Clerk's Papers (CP) at 66. The written order reflects it was presented by the State and approved by defense counsel.

---

[1] Deoxyribonucleic acid.

2

The case was set for a new trial in 2017. The State retried Mr. Fort and he was found guilty of both counts of first degree rape of a child.

At sentencing, the trial court ordered various community custody conditions and legal financial obligations (LFOs) that are challenged on appeal. For instance, the court ordered that Mr. Fort "not possess or consume alcohol or go to places where alcohol is the chief commodity for sale." CP at 107. The court also ordered that he "obtain a written substance abuse evaluation with a qualified provider approved by [his] assigned community corrections officer and complete all recommended treatment including attending AA [Alcoholics Anonymous] and/or NA [Narcotics Anonymous] support groups and obtaining a sponsor." CP at 107. The court also required him to submit to random "UA/BA" (urinalysis and blood-alcohol) monitoring. CP at 107. Finally, the court imposed various LFOs, including a $100 DNA collection fee and a $200 criminal filing fee.

Mr. Fort appeals.

## ANALYSIS

A.    DOUBLE JEOPARDY

Mr. Fort argues the trial court violated the constitutional prohibition on double jeopardy when it declared a mistrial based only on "'GOOD CAUSE'" when the

3

Washington Constitution permits a retrial only in cases of "'EXTRAORDINARY AND

STRIKING CIRCUMSTANCES.'" Br. of Appellant at 6. The State, citing the October

2016 written order, argues Mr. Fort waived this argument by jointly moving for a mistrial.

The report of proceedings is inconsistent with the written order. It shows that the

court reporter escorted the jury out of the courtroom, and the trial court then discussed

new trial dates. The report of proceedings does not show Mr. Fort moving for a mistrial.

Because of this inconsistency, we remanded the appeal to the trial court for a

hearing to answer three questions:

> 1. Precisely how and at what point was the jury discharged;
> 2. Were there discussions between the court and counsel concerning declaring a mistrial that are not reflected in the transcribed record and, if so, what does each party contend was said, and what does the court find was said;
> 3. If there were discussions off the record, who was present, and where did those discussions occur.

Order Transferring Appeal to Superior Court for Reference Hearing, *State v. Fort*, No.

35412-1-III (Wash. Ct. App. Oct. 29, 2018) at 2.

Ultimately, a judge other than the trial judge conducted the remand hearing. In its

August 2, 2019 ruling, the remand judge found:

> [Prior to the trial court discharging the jury,] the parties briefly discussed a mistrial based on the hung jury—even Dallin Fort testified at the July 10, 2019, [remand] hearing that his attorney asked him then if he wanted a new trial. There was no objection to declaring a mistrial.

No. 35412-1-III
*State v. Fort*

CP at 171.[2]

*Analysis of Double Jeopardy Claim*

The United States Constitution and the Washington Constitution prohibit a

defendant from being tried for the same offense twice. U.S. CONST. amend V; CONST.

art. I, § 9; *State v. Robinson*, 146 Wn. App. 471, 477-78, 191 P.3d 906 (2008). This rule

protects the defendant's rights to have his or her trial completed by a particular tribunal.

*Robinson*, 146 Wn. App. at 478. The article I, section 9 double jeopardy provision has

been construed to provide protection identical to that provided under the United States

Constitution. *State v. Larkin*, 70 Wn. App. 349, 353, 853 P.2d 451 (1993).

"Once a jury has been empanelled and sworn, jeopardy attaches." *Robinson*, 146

Wn. App. at 478. "Once jeopardy has attached, the court must determine whether a retrial

is barred." *Id.*

When the defendant requests a mistrial, double jeopardy does not bar a retrial. *Id.*

at 478-79. However, when a mistrial is without the consent of the defendant, the court

must find manifest necessity to avoid violating double jeopardy. *Id.* at 479.

---

[2] We decline to discuss the procedures and safeguards used to ensure that our
questions were fairly answered on remand. These procedures and safeguards are
discussed in the remand court's ruling, attached as an appendix to this opinion.

5

Here, the parties briefly discussed a mistrial.  Mr. Fort's trial attorney asked him if he wanted a new trial.  Mr. Fort could have objected to a new trial, but he did not.  At a minimum, Mr. Fort impliedly authorized his attorney to sign the joint motion for mistrial.  We conclude that Mr. Fort consented to a mistrial and, thus, waived the purported error. He may not now claim that his later conviction was barred by double jeopardy.

B.    COMMUNITY CUSTODY CONDITIONS

Mr. Fort contends the trial court exceeded its authority by ordering various community custody conditions.  The challenged conditions prohibit him from consuming alcohol, prohibit him from possessing alcohol, and prohibit him from going to places where alcohol is the chief commodity for sale.  These conditions also require him to undergo urinalysis and blood alcohol testing, and require him to undergo a substance abuse evaluation and comply with any treatment recommendations.

The State first responds that Mr. Fort may not challenge the community custody conditions because he did not object to them below.  We disagree.  An unlawful sentence may be challenged for the first time on appeal.  *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999).

The State also responds that former RCW 9.94A.713(1) (2001) grants the Sentencing Review Board (the Board) and the Department of Corrections (DOC)

6

authority to impose additional rehabilitative conditions of community custody. That may

be so. But Mr. Fort challenges the conditions imposed on him by the court, not the Board

or the DOC. We express no opinion on the propriety of conditions the Board or the DOC

may impose.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, governs a

court's imposition of community custody conditions. *State v. Coombes*, 191 Wn. App.

241, 250, 361 P.3d 270 (2015). Any sentence imposed under the SRA must be in

accordance with the law in effect when the offense was committed. *Id.*; RCW 9.94A.345.

Mr. Fort's crimes were committed between June 1, 2003, and September 1, 2003, so we

look to the SRA in effect during that time.

### 1. *The prohibition on consuming alcohol is valid*

Former RCW 9.94A.712(6)(a) (2001) permitted a sentencing court to enter

conditions under former RCW 9.94A.700(5) (2002), which provided in pertinent part:

> As a part of any terms of community placement imposed under this section,
> the court may also order one or more of the following special conditions:
> . . . .
> (d) The offender shall not consume alcohol.

Therefore, the prohibition against consuming alcohol was lawful under the SRA at

the time the offenses were committed.[3]

> 2. *The prohibitions on possessing alcohol and going to places*
> *where alcohol is the chief commodity for sale are not crime*
> *related and, thus, are invalid*

Former RCW 9.94A.700(5)(e) authorizes a court to enter crime-related

prohibitions. A "crime-related prohibition" is "an order of a court prohibiting conduct

that directly relates to the circumstances of the crime for which the offender has been

convicted." Former RCW 9.94A.030(12) (2002). A condition is not crime related if

there is no evidence linking the prohibited conduct to the offense. *State v. O'Cain*, 144

Wn. App. 772, 775, 184 P.3d 1262 (2008).

In *O'Cain*, the defendant was convicted of rape, and the sentencing court

prohibited him from accessing the Internet without prior approval from his supervising

community corrections officer. *Id.* at 774. We struck down the condition because the

trial court made no finding that Internet use contributed to the defendant's crime. *Id.* at

775.

---

[3] In *State v. Jones*, 118 Wn. App. 199, 204, 76 P.3d 258 (2003), the defendant challenged the community custody condition prohibiting alcohol consumption. Applying the 1988 amendments to the SRA, the court affirmed the condition, reasoning "the 1988 legislature manifested its intent that a trial court be permitted to prohibit the consumption of alcohol regardless of whether alcohol had contributed to the offense." *Id.* at 206.

Here, the trial court did not make any finding that alcohol or any other drug contributed to Mr. Fort's crime, the risk of reoffending, or the safety of the community. Therefore, the trial court erred in prohibiting Mr. Fort from possessing alcohol and from going to places where alcohol is the chief commodity for sale. In addition, the trial court erred in requiring Mr. Fort to submit to random UA/BA monitoring, and to obtain a written substance abuse evaluation and to follow all treatment recommendations.

C.    STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

Mr. Fort submits two arguments in his SAG. In an SAG, this court only considers arguments that are not repetitive of the party's briefing. RAP 10.10(a).

*Additional Ground 1—Double Jeopardy*

Mr. Fort contends the trial court erred by not considering factors discussed in *United States v. Bates*, 917 F.2d 388, 396 (9th Cir. 1990), which concerns double jeopardy. Whether Mr. Fort's retrial violated double jeopardy principles was properly raised and argued in his opening brief. We decline to revisit the issue in the SAG.

*Additional Ground 2—Ineffective Assistance of Counsel*

Mr. Fort contends he was denied effective assistance of counsel when counsel did not move to dismiss once the jury was discharged. To prevail on a claim of ineffective assistance of counsel, a defendant carries the burden of demonstrating (1) the attorney's

9

performance was deficient—that is, it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the accused—that is, absent the deficiency there is a reasonable probability that the result of the proceeding would have been different. *State v. Humphries*, 181 Wn.2d 708, 719-20, 336 P.3d 1121 (2014). Mr. Fort's argument presupposes that the trial transcript is a complete record and that he did not have an opportunity to object to a mistrial. We reject Mr. Fort's argument because he was given an opportunity to object to a mistrial. The remand judge found that the parties discussed a mistrial and that Mr. Fort's attorney asked him if he wanted a new trial. Mr. Fort was given an opportunity to object to a new trial, but he did not. At a minimum, Mr. Fort impliedly authorized his attorney to sign the joint motion for mistrial. Mr. Fort has not shown that his attorney's performance fell below an objective standard of reasonableness.

      D.     MOTION TO STRIKE DNA COLLECTION FEE AND CRIMINAL FILING FEE

Mr. Fort filed a motion to reverse two LFOs. Relying on *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), he argues we should order the trial court to strike the $100 DNA collection fee and the $200 criminal filing fee.

The *Ramirez* court held that House Bill 1783 applies prospectively to cases on direct appeal. *Id.* at 747. House Bill 1783 establishes that the DNA collection fee is no

No. 35412-1-III
*State v. Fort*

longer mandatory if the offender's DNA has already been collected. *Id.* House Bill 1783 also prohibits imposing the $200 criminal filing fee on indigent defendants. *Id.*

Here, Mr. Fort likely had his DNA collected in 2006 after his initial conviction. He is also indigent for purposes of this appeal. We, therefore, grant Mr. Fort's motion and direct the trial court to strike the $100 DNA collection fee and the $200 criminal filing fee.

E.   APPELLATE COSTS

Mr. Fort asks that the State not be awarded appellate costs in the event it substantially prevails. The State has substantially prevailed. In accordance with RAP 14.6(a), we defer the decision of appellate costs to our clerk or commissioner.

Affirm in part, remand to strike DNA collection fee, criminal filing fee, and certain community custody conditions.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Pennell, J.

11

# APPENDIX

CN: 200501009501
SN: 248
PC: 9

FILED

AUG 0 2 2019

Timothy W. Fitzgerald
SPOKANE COUNTY CLERK

IN THE SUPERIOR COURT STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SPOKANE

State of Washington

                Plaintiff/ Petitioner

vs.

DALLIN DAVID FORT,

                Defendant/ Respondent

SPOKANE COUNTY. NO.  2005-1-00950-1

Court of Appeals Div. III No. 354121

**COURT'S RULING**

## PROCEDURAL BACKGROUND

On October 29, 2018, the Court of Appeals remanded Mr. Fort's matter to the trial court that handled

his retrial. Judge Plese held a reference[1] hearing on November 8, 2018, and submitted the requested findings

on November 20, 2018. Division III issued an unpublished decision on February 26, 2019, that generally affirmed

his conviction but remanded to vacate the criminal filing fee, DNA collection fee, and certain community

supervision conditions.

---

[1] Division III later clarified how: "The prior RAP 16.12 order remanding for a reference hearing should have been
denominated as a RAP 9.10 order correcting the record. The purpose of the order was for the trial court to enter findings in
lieu of the missing recording. As reflected by the transcript, the procedure contemplated by this court was substantially
followed in that everyone was given an opportunity to say what they believed occurred during the missing recording . . . . "
Clerk's Ruling, *State v. Fort*, No. 35412-1-III (Wash. Ct. App. Dec. 13, 2018). Indeed, the most recent opinion remanded with
direction for a new RAP 9.10 hearing. Order (May 2, 2019).

Mr. Fort moved for reconsideration, which was granted on May 2, 2019. The order vacated the February opinion and remanded for a new hearing to clarify/supplement the record. On May 14, 2019, Judge Plese sent a letter to the parties, appointed Mr. Fort counsel, and set a new hearing. A copy of the May 2nd order was attached to the letter but not separately filed. The letter was erroneously denominated as "Notice of Hearing" in the Superior Court file rather than as correspondence or a transmittal of an appellate decision.

On May 30, 2019, Mr. Fort's new counsel filed a motion to disqualify Judge Plese from presiding over the new RAP 9.10 hearing. Judge Plese recused on June 14, 2019, and the undersigned was assigned the matter on remand as Chief Criminal Presiding. On June 24, 2019, Mr. Fort's counsel obtained an agreed, off-docket continuance of the hearing to July 10, 2019, in order to conduct interviews. In response, the undersigned sent a letter to counsel, quoting extensively from the February 26, 2019, opinion as to the limited scope of the remand and clarifying what it understood the purpose of the remand hearing was. Neither counsel responded.

Until the July 10, 2019, hearing, the undersigned was unaware of the May 2, 2019, order that vacated the February 26, 2019, opinion and the expanded scope of remand. Mr. Fort testified, as well as presented testimony from his trial attorney, his parents, and a long-time family friend. The State presented its recollection of the matter. The undersigned took this matter under advisement and submits these findings on remand in accordance with the 90-day deadline set forth in the May 2, 2019, order, despite having the case assigned since June 24, 2019.

## QUESTIONS PRESENTED

The May 2, 2019, order instructed the lower court to appoint Mr. Fort an attorney and hold a new hearing to clarify/supplement the record in accordance with RAP 9.10 and enter written findings that answer the following questions:

1. Precisely how and at what point the jury was discharged.

Page 166

2. Were there discussions between the Court and counsel concerning declaring a mistrial that were not reflected in the transcribed record and, if so, what does each party contend was said, and what does the court find was said;

3. If there were discussions off the record, who was present, and where did those discussions occur.

In addition to answering these three questions, the trial court may make such additional findings that are reasonably necessary to provide context concerning how the declaration of mistrial was entered. If the findings involve off-the-record discussions, the court should set forth what each party contends was said and the trial court's findings as to what was said.

In making these findings of fact, this court considered the following testimony from the July 10, 2019, hearing:

- Christian Phelps, who was Mr. Fort's attorney at the time of trial;
- David Fort, the Defendant's father;
- Lila Fort, the Defendant's mother;
- Michael Hughes, the Forts' neighbor who had known the Defendant for decades;
- Dallin Fort, the Defendant;
- The trial prosecutor's statements under oath.

This court also reviewed Judge Plese's prior responsive findings, which were filed on November 20, 2018, and included the following exhibits:

- A certified copy of the transcript from the original hearing on November 8, 2018;
- A certified copy of the clerk's minutes from October 7, 2017.

### FINDINGS

The October 7, 2017, transcript reflects that the jury had a question about what they needed to do if they could not agree on a verdict.[2] Judge Plese brought the attorneys back to the courtroom, explained what

---

[2] VRP at 239.

the jury's question was and indicated that she believed that she needed to bring the jury back in and read the colloquy about whether they could reach a verdict with more time.[3] Judge Plese had the jury brought back in, reviewed the colloquy with presiding juror, who indicated there was no reasonable probability of reaching a unanimous verdict with more time.[4] The jury was escorted to the jury room.[5] There is no dispute as to any of these facts.

It is noteworthy that the trial transcript did not reflect Dallin[6] Fort's additional recollection. He testified at the July 10, 2019, hearing how the presiding juror began speaking with the other jurors when responding to the judge's question and had to be reminded by the court not to discuss it, and then the presiding juror responded that additional time would not help. The record clearly does not support his recollection of this event, which affects the assessment of his credibility.

It is undisputed that Judge Plese's court reporter took the jury from the courtroom to the jury room, which resulted in the brief gap in the record. Judge Plese's findings clarify that the October 7, 2017 transcript reference to "all rise" related to when the jury was escorted from the courtroom after she advised them that they would be taken to the jury room to await further instructions.

Mr. Phelps, trial counsel, testified at the July 10, 2019, hearing that he could not recall whether he moved for a mistrial or the State moved for a mistrial or it was just assumed it was a mistrial because the jury was deadlocked. He also testified that if he didn't move for a mistrial, he would have agreed to one because the jury was deadlocked. He did not recall the specifics as to having a discussion with the judge about whether a mistrial was appropriate or any specific findings. On cross-examination, Mr. Phelps testified he expected there to have been some conversation, but it would have been brief because both he and the trial prosecutor were seasoned trial lawyers with significant experience and that there didn't need to be a lot of discussion about a

---

[3] *Id.*, 239-40
[4] *Id.*, at 240.
[5] *Id.* at ll. 18-22.
[6] This court is using the first name to avoid confusion with his father also being Mr. Fort; no disrespect is intended.

hung jury and what to do with a hung jury. He testified that he probably would not have signed off on an order of mistrial without some discussion about a hung jury, but that discussion would not need to have been very long and that there would have been a discussion about needing new dates.

All of the defense witnesses agree that Judge Plese was on the bench in open court when they discussed dates for the new trial after the jury left the courtroom. The defense witnesses claim that Judge Plese left the bench after the jury was excused and came back with a piece of paper after about five minutes. As noted above, Judge Plese clarified that the "all rise" in the transcript reflected the jury leaving the courtroom and that she remained in the courtroom.[7] She further clarified how, after the jury was escorted out, she asked if there was any objection to declaring a mistrial and there was no objection.[8] There was no testimony from the July 10, 2019, hearing that suggested anyone objected to a mistrial. The trial court asked counsel to prepare an order, which the State prepared.

Judge Plese clarified that she asked trial counsel, with Dallin Fort present, and there was no objection to the court releasing the jury and excusing them.[9] Likewise, there was no testimony from the July 10, 2019, hearing that suggested anyone objected to releasing and excusing the jury.

The Defendant's father testified at the July 10, 2019, hearing how there was a discussion among Judge Plese, the attorneys, and Dallin Fort that he could not hear. He estimated that discussion took place took approximately one to two minutes. He didn't hear any findings about a mistrial, but assumed such when the judge began talking about rescheduling a new trial date. It is also noteworthy that the transcript from the October 7, 2017, hearing resumed with Judge Plese discussing trial dates and counsel's availability.[10] When the Forts' neighbor, who's known Dallin Fort for about 35 years, testified he didn't see anything different from Mr. David's Fort testimony. Likewise, Mrs. Fort testified that there was a conversation that she couldn't hear until the parties were discussing rescheduling.

---

[7] Findings, Opinion & Order on Reference Hearing, (filed Nov. 20, 2018) at p. 3.
[8] *Id.*
[9] *Id.*
[10] VRP at 241.

Judge Plese clarified that she asked the attorneys if they wished to speak to the jury after she excused them.[11] Both said that they wanted to.[12] Judge Plese said that she then went to the jury room to release them from the case, thanked them for their service, and invited them to remain if they wished to voluntarily speak with the attorneys.[13] After she left the jury room, the attorneys were invited to come speak with any jurors who wanted to stay.[14]

Dallin Fort testified at the July 10, 2019, hearing that his attorney asked him if he wanted a new trial, that the judge wasn't on the bench much longer after the jury was escorted out, and that there was a break afterwards. She returned to the bench with the court reporter and they started talking about rescheduling the trial. When the trial prosecutor handed over the order of mistrial, Mr. Fort testified that Mr. Phelps asked him if he wanted a new trial. Dallin Fort testified that he didn't know whether the jury was discharged before or after the break.

The trial prosecutor stated under oath that there was a brief discussion about the mistrial. Consistent with the defense witnesses who referenced a brief discussion that they could not hear, both trial attorneys – while they couldn't recall the specific words used referenced a brief conversation and that after the jury was excused, Judge Plese stated that because the jury was hung and could not reach a verdict, a mistrial would have to be declared and a new trial date reset.

Dallin Fort testified at the same hearing that there was no discussion about whether it was appropriate to declare a mistrial and no discussion whether there was any kind of manifest necessity in declaring a mistrial. He testified that the only discussion after the judge returned to the bench surrounded scheduling a new trial.

The trial prosecutor stated under oath that while the jury was excused but not yet dismissed, Judge Plese declared a mistrial. While he couldn't recall the specific words, he testified that there was a discussion that there would be a mistrial because of the hung jury and they drafted an order and that this did not occur on

---

[11] Findings, Opinion & Order on Reference Hearing, (filed Nov. 20, 2018) at p. 3.
[12] *Id.*
[13] Findings, Opinion & Order on Reference Hearing, (filed Nov. 20, 2018) at p. 3.
[14] *Id.*

the record because the court reporter left to escort the jury to the jury room. [N.B., The jury rooms are down a short hallway adjacent to the courtrooms.] The record from October 7, 2017, resumes with the parties discussing potential trial dates.

## RESPONSES TO QUESTIONS PRESENTED

1. **Precisely how and at what point the jury was discharged.**

Judge Plese excused the jury after the presiding juror stated that additional time would not assist them in coming to a unanimous verdict. Her court reporter escorted them from the courtroom to the jury room in the adjacent hallway a short distance away. After a brief discussion with the attorneys and Dallin Fort regarding the mistrial as set forth above and whether the attorneys wished to speak to the jury after she discharged them, Judge Plese discharged the jury in the jury room. After they were discharged and the judge exited the jury room, the attorneys spoke with the jurors.

2. **Were there discussions between the court and counsel concerning declaring a mistrial that were not reflected in the transcribed record and, if so, what does each party contend was said, and what does the court find was said.**

Yes. This court finds that there was a brief conversation that occurred while Judge Plese remained on the bench for a short time period after the court reporter escorted the jury to the jury room. Each party's contention as to what was said is reflected above and attributed to the respective party. The October 7, 2017, transcript resumes with the parties discussing the new trial date.

This court finds that the parties briefly discussed a mistrial based on the hung jury - even Dallin Fort testified at the July 10, 2019, hearing that his attorney asked him then if he wanted a new trial. There was no objection to declaring a mistrial. The remaining defense witnesses the Defendant's parents and long-time family neighbor testified that there was a brief conversation that they couldn't hear. As noted earlier,

aside from potential bias, this court also has accuracy and credibility concerns with Dallin Fort's recollections after he testified on July 10, 2019, as to something that was clearly contrary to the original trial transcript.

**3. If there were discussions off the record, who was present and where did those discussions occur.**

The brief discussion occurred in open court but was inadvertently not on the record because of the unusual circumstance of the court reporter escorting the jury to the jury room. Those known to be present were Judge Plese, the trial prosecutor (John Love), Dallin Fort's trial attorney (Christian Phelps), Dallin Fort, the court clerk (Jennifer Gage), Mr. and Mrs. Fort (Dallin's parents), and Michael Hughes (the Forts' neighbor).

Dated: August 2, 2019

Michelle D. Szambelan

MICHELLE D. SZAMBELAN
SUPERIOR COURT JUDGE